2022 IL App (2d) 190474
No. 2-19-0474
Opinion filed March 30, 2022

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 11-CF-2428 |
| JORGE L. REYES, | ) ) | Honorable Jeffery S. MacKay, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.
Justices McLaren and Zenoff concurred in the judgment and opinion.

**OPINION**

¶ 1    We consider in this case (1) whether a petition to revoke fines under section 5-9-2 of the

Unified Code of Corrections (Corrections Code) (730 ILCS 5/5-9-2 (West 2018)) requires the trial

court to wait 30 days before denying it *sua sponte*, and (2) whether certain fines defendant sought

to revoke were properly subject to such a petition. We answer both questions in the negative.

¶ 2                                    I. BACKGROUND

¶ 3    In May 2012, defendant, Jorge L. Reyes, pleaded guilty to aggravated driving while under

the influence of alcohol (625 ILCS 5/11-501(a)(2), (d)(2)(C) (West 2010)), per a plea agreement.

The agreement provided that defendant would be sentenced to three years' imprisonment and that

"zero fines, court costs only, DNA indexing and fee" would be imposed. After finding that

defendant knowingly and voluntarily entered the plea and accepted the agreement, the trial court reiterated: "zero fine[s], court costs only, $1,000 tech fee, $100 second offender fee, $200 indexing fee by statute, unsatisfied judgment entered against any outstanding fines or costs."

¶ 4    The written sentencing order, which was dated May 9, 2012, provided: "For count 0001 pay $1,605.00. This is costs only." It further stated: "This order reflects a credit of $5.00 for the following date(s) since 10/23/2011 for countnumber [*sic*] 0001." (CLR 53) The order then listed a number of charges. These charges included:

| | |
|---|---|
| COURT AUTOMATION FEE | $15 |
| STATE POLICE FEE | $15 |
| DOCUMENT STORAGE FEE | $15 |
| CLERK'S FEE | $125 |
| DRUG COURT/MENTAL HEALTH COURT FUND | $10 |
| STATES ATTORNEY FEES | $30 |
| COURT FUND FEE | $30 |
| VIOLENT CRIME VICTIMS ASSISTANCE FUND | $25 |
| COURT SECURITY FEE | $25 |
| SERIOUS TRAFFIC VIOLATION FEE | $35 |
| COUNTY JAIL MEDICAL COSTS FUND FEE | $10 |
| TRAUMA CENTER FEE | $100 |
| CHILD ADVOCACY CENTER FEE | $30 |
| DUI TECH FUND | $1000 |
| DNA ANALYSIS FEE | $200 |

| | |
|---|---|
| SPINAL CORD FUND | $5 |
| | _____ |
| TOTAL | $1670 |

Next to some of the listed charges was a notation that the charge was credited against the total. The credited amounts included $10 for the Drug Court/Mental Health Court Fund, $25 for the Violent Crime Victims Assistance Fund, and $30 for the Child Advocacy Center Fee. The total charges, less the credited $65, was $1605. Nothing in the order indicated that the court imposed a penal fine under the Corrections Code. Defendant neither moved to withdraw his guilty plea nor appealed this order.

¶ 5 Over six years later, in July 2018, defendant sent a letter to the clerk of the court, asking about the amount of fines he owed in this and other cases. The clerk responded that defendant owed $2,086.50 in this case. Presumably, this amount includes interest.

¶ 6 On August 7, 2018, defendant mailed to the trial court and the State a petition to revoke his fines under section 5-9-2 of the Corrections Code (730 ILCS 5/5-9-2 (West 2018)), which asserted that he was indigent and would like a "fresh start" upon his release from prison. In his attached application for appointed counsel, defendant indicated that he had no assets. The petition and application were file-stamped August 20, 2018, and the trial court held a hearing on the petition one day later. Before ruling on the petition, the trial court asked the assistant state's attorney if "[she] ha[d] anything [she] want[ed] to add on the record?" The attorney replied that she did not. The court denied the petition, stating:

"[Defendant] is saying, because he is in custody on another case, that he can't pay the fines and costs on this, although he wasn't in custody on the other case until February 3rd of 2017[,] so he was out of custody for five years before he alleges he was unable to pay any

fines and costs. So, he had five years to try to pay the fines and costs, and he didn't do it.
So[,] his motion is going to be denied."

Defendant neither moved to reconsider nor appealed this order.

¶ 7    Four months later, on February 22, 2019, defendant again mailed to the trial court and the State a petition to revoke his fines. Defendant again argued that he was indigent. In his attached application for appointment of counsel, defendant indicated that he earned $70 the previous year, had $183 in a prison trust account, and owned personal property worth $70. The petition and application were file-stamped February 27, 2019. Two days later, on March 1, 2019, the trial court held a hearing on defendant's petition. Although the State appeared at that hearing, the trial court did not ask the State whether it wished to provide any input on defendant's petition. The court *sua sponte* denied the petition, finding that defendant failed to make a showing of good cause. Defendant neither moved to reconsider nor appealed this order.

¶ 8    Two months later, on May 1, 2019, defendant mailed to the trial court and the State a third petition to revoke his fines. As with the previous petitions, defendant filed a notice of filing. Although he did not completely fill out the notice, defendant certified that he served by mail the petition to revoke fines on the State and the court clerk.

¶ 9    In the petition, defendant again argued that he was indigent. More specifically, he asserted that he was illiterate, had no money other than the $15 he earned each month, and would, upon his release, "[b]e homeless living in [a] shelter with no financial assistance except [the] shelter." In his attached application for the appointment of counsel, defendant indicated that he earned $180 the previous year, had $200 in a prison trust account, and owned property worth $50. The petition and application were file-stamped May 6, 2019. Fifteen days later, on May 21, 2019, the trial court held a hearing on the petition. Although the State appeared at the hearing, it had not formally

responded to the petition. The trial court denied the petition without asking the State whether it had any input. The court found that "defendant failed to make a showing of good cause."

¶ 10    On June 5, 2019, defendant filed a *pro se* notice of appeal, and appointed counsel filed an amended notice of appeal on June 26, 2019.

¶ 11    While the appeal was pending with us, we remanded the case for the limited purpose of allowing defendant to file a motion asserting that his "fees" were improper under Illinois Supreme Court Rule 472 (eff. May 17, 2019). The parties filed an agreed motion, asserting that defendant was entitled to a *per diem* credit of $5 for each of the 200 days he spent in presentence custody. See 725 ILCS 5/110-14(a) (West 2018) ("Any person incarcerated on a bailable offense who does not supply bail and against whom a fine is levied on conviction of the offense shall be allowed a credit of $5 for each day so incarcerated ***."). The parties agreed that defendant was entitled to a *per diem* credit on each of the following charges:

| | |
|---|---|
| STATE POLICE FEE | $15 |
| DRUG COURT/MENTAL HEALTH COURT FUND | $10 |
| COURT FUND FEE | $30 |
| SERIOUS TRAFFIC VIOLATION FEE | $35 |
| CHILD ADVOCACY CENTER FEE | $30 |
| DUI TECH FUND | $1000 |
| TOTAL | $1120 |

The parties agreed that defendant was entitled to a credit of $960 against these charges. The parties agreed on $960 because defendant was in presentencing custody for 200 days. Thus, at $5 per day, he was eligible for a credit against his fines of $1000. The parties indicated that the difference was

because, when the fines were imposed, defendant was given a $40 credit against his fines for the $10 Drug Court/Mental Health Court fund and the $30 Child Advocacy Center Fee. The parties did not recognize that defendant was also given credit for the $25 Violent Crime Victims Assistance Fund fine. The trial court granted the parties' agreed motion and awarded defendant $960 in presentencing credit. Although defendant was not entitled to a *per diem* credit for the Violent Crime Victims Assistance Fund fine (see *People v. Lake*, 2015 IL App (3d) 140031, ¶ 36), the court cannot deny a credit already received (see *People v. Warren*, 2016 IL App (4th) 120721-B, ¶ 83). So, summing the $960 credit and the $25 credit for the Violent Crime Victims Assistance Fund fine, the defendant's outstanding fine balance is $135.

¶ 12     Because, even with the credits, defendant has $135 in outstanding fines, we now consider defendant's issues raised before we remanded this appeal.

¶ 13                                                    II. ANALYSIS

¶ 14     On appeal, defendant argues that the trial court erred by ruling on his petition before 30 days had passed from filing the petition. He alternatively argues that the denial of the petition was erroneous on the merits. We disagree with him on both points.

¶ 15     As we held in *People v. Rivera*, 2020 IL App (2d) 171002, we have jurisdiction to consider an appeal from the denial of a section 5-9-2 petition to revoke fines without a defendant first seeking to withdraw his guilty plea. *Id.* ¶ 8. In addition, we observe that the legislature has not always been consistent about labeling charges as either a "fine" or a "fee." *People v. Jones*, 223 Ill. 2d 569, 575-76 (2006); see *People v. Rodriguez*, 362 Ill. App. 3d 44, 51 (2005) (noting that the same charge was labeled as a "fine" in one statute and a "fee" in another). This case, too, exemplifies that problem. Although virtually all of defendant's remaining assessments are listed as "fees" and contributions to "funds," they are *fines*. Specifically, they were assessed not to

recover the State's expenses for prosecuting the defendant, but rather were pecuniary punishments imposed as part of his conviction and sentence. *People v. Mullen*, 2018 IL App (1st) 152306, ¶ 21.

¶ 16                                    A. Forfeiture

¶ 17    As an initial matter, we find that defendant has forfeited any argument that any of his remaining fines were improperly assessed. Rule 472(c) provides that:

> "No appeal may be taken by a party from a judgment of conviction on the ground of any sentencing error specified above[, which includes imposition of fines,] unless such alleged error has first been raised in the circuit court. *When a post-judgment motion has been filed by a party pursuant to this rule, any claim of error not raised in that motion shall be deemed forfeited*." (Emphasis added.) Ill. S. Ct. R. 472(c) (eff. May 17, 2019).

¶ 18    As we stated above, we remanded this appeal to the trial court so that defendant could file a motion under Rule 472. The parties filed an agreed motion, asserting that defendant was entitled to a *per diem* credit for various fines. Although defendant intimated in his appellate brief that he could file a Rule 472 motion—claiming that the fines imposed violated the parties' plea agreement, a contention that *could* have merit (see *People v. Hinton*, 2019 IL App (2d) 170348, ¶ 7)—no such motion was ever filed. Accordingly, under Rule 472, we must hold that defendant has forfeited any claim that the fines were improper because they violated the parties' plea agreement. See Ill. S. Ct. R. 472(c) (eff. May 17, 2019). Of course, nothing prevents defendant from filing a postconviction petition asserting that trial and appellate counsel were ineffective for failing to argue that the court should vacate his fines pursuant to the parties' plea agreement. See *People v. Childress*, 191 Ill. 2d 168, 175 (2000) (appellate counsel may be ineffective for failing to raise trial counsel's ineffectiveness on direct appeal).

¶ 19 All of that said, forfeiture does not apply to the issues defendant originally raised concerning the petition to revoke his fines, which we now address.

¶ 20                      B. Petitions to Revoke Fines and Our Supreme

Court's Rules on Service and Notice

¶ 21 Defendant first argues that the trial court's denial of his petition to revoke his fines was premature. Relying on case law, defendant argues that his petition was governed by Illinois Supreme Court Rule 105 (eff. Jan. 1, 2018) and Rule 106 (eff. Aug. 1, 1985) and that the trial court could not *sua sponte* deny the petition until 30 days had passed from its filing. Defendant filed his petition, at the earliest, on May 5, 2019 (see Ill. S. Ct. R. 12(c) (eff. July 1, 2017)), and the trial court *sua sponte* denied his petition on May 21, 2019, only 16 days later. In that light, defendant argues that the denial of his petition was premature and that we must vacate the denial and remand this cause for further proceedings.

¶ 22 To resolve this issue, we must determine which rules govern the disposition of petitions to revoke fines. This determination requires us to examine Illinois Supreme Court Rule 104 (eff. Jan. 1, 2018), Rule 105, and Rule 106 in addition to section 5-9-2 of the Corrections Code (730 ILCS 5/5-9-2 (West 2018)). In doing so, we follow the well-settled principles for interpreting rules and statutes. " 'With rules, as with statutes, our goal is to ascertain and give effect to the drafters' intention.' " *People v. Salem*, 2016 IL 118693, ¶ 11 (quoting *People v. Marker*, 233 Ill. 2d 158, 164-65 (2009)). " 'The most reliable indicator of intent is the language used ***.' " *Id.* (quoting *Marker*, 233 Ill. 2d at 164-65). " 'When the language is clear and unambiguous, we will apply the language used without resort to further aids of construction.' " *Lake Environmental, Inc. v. Arnold*, 2015 IL 118110, ¶ 12 (quoting *Roth v. Illinois Farmers Insurance Co.*, 202 Ill. 2d 490, 493 (2002)). Likewise, "[w]e will not depart from the plain *** language [of a statute or a supreme court rule]

by reading into [them] exceptions, limitations, or conditions" that the drafters did not provide. *People v. Roberts*, 214 Ill. 2d 106, 116 (2005). Because interpreting statutes and our supreme court's rules present questions of law, our review is *de novo*. See *In re Marriage of Fatkin*, 2019 IL 123602, ¶ 25 ("Like the construction of a statute, the construction of [supreme court] rules is a question of law that we review *de novo*.").

¶ 23    With these principles in mind, we turn first to section 5-9-2 of the Corrections Code, which provides: "Except as to fines established for violations of Chapter 15 of the Illinois Vehicle Code [(Vehicle Code) (625 ILCS 5/15-101 *et seq.* (West 2018))], the court, upon good cause shown, may revoke the fine or the unpaid portion or may modify the method of payment." 730 ILCS 5/5-9-2 (West 2018). As the parties agree, section 5-9-2 does not indicate what rules govern the disposition of petitions to revoke fines.

¶ 24    Next, we turn to Rules 104, 105, and 106. These rules apply in civil as well as criminal proceedings. See Ill. S. Ct. R. 1, Committee Comments (rev. July 1, 1971). Rule 104(b) states:

"Pleadings subsequent to the complaint, written motions, and other documents required to be filed shall be filed with the clerk with a certificate of counsel or other proof that the documents have been served on all parties who have appeared and have not theretofore been found by the court to be in default for failure to plead." Ill. S. Ct. R. 104(b) (eff. Jan. 1, 2018).

Here, the record indicates that defendant certified that he served his petition on the court and the State by mail. Although the certification paperwork was incomplete, the State is not taking issue with service. Thus, we must conclude that service by mail was proper. See Ill. S. Ct. R. 12(b)(5) (eff. July 1, 2017) ("[I]n case of service by mail *** [service is proved] by certification under section 1-109 of the Code of Civil Procedure [(Civil Code) (735 ILCS 5/1-109 (West 2018))] of

the person who deposited the document in the mail *** stating the time and place of mailing or delivery, the complete address that appeared on the envelope or package, and the fact that proper postage or the delivery charge was prepaid ***."). Importantly, under Rule 104(b), nothing indicates that a party served must be given time to respond or file an appearance before the trial court can rule on the pleading filed.

¶ 25    In contrast, Rules 105 and 106 provide that a served party must be given time to answer or file an appearance *before* the trial court may rule on the pleading. Rule 105 "applies to parties who are in default—those who have not appeared either personally or by counsel." *Eckel v. Bynum*, 240 Ill. App. 3d 867, 875 (1992). Rule 105(a) provides:

> "If new or additional relief, whether by amendment, counterclaim, or otherwise, is sought against a party not entitled to notice under Rule 104, notice shall be given him as herein provided. *** It shall state that a pleading seeking new or additional relief against him has been filed and that a judgment by default may be taken against him for the new or additional relief *unless he files an answer or otherwise files an appearance in the office of the clerk of the court within 30 days* after service, receipt by certified or registered mail, or the first publication of the notice, as the case may be, exclusive of the day of service, receipt or first publication." (Emphasis added.) Ill. S. Ct. R. 105(a) (eff. Jan. 1, 2018).

Here, the State is not in default. Thus, Rule 105 does not apply.

¶ 26    Rule 106, however, expands the filing requirements of Rule 105 to three specific proceedings. It states: "Notice of the filing of a petition under section 2-1401, section 2-1601 or section 12-183(g) of the [Civil Code] shall be given by the same methods provided in Rule 105 for the giving of notice of additional relief to parties in default." Ill. S. Ct. R. 106 (Aug. 1. 1985).

Nowhere does Rule 106 indicate that the filing requirements of Rule 105 also apply to petitions to revoke fines under section 5-9-2 of the Corrections Code. Thus, it appears that Rule 106 does not apply here either. Given that Rule 104(b) was followed in this case—and the plain language of that rule does not provide that the party served must be given time to respond or appear before the trial court can rule—we cannot conclude that the trial court prematurely ruled on defendant's petition to revoke his fines.

¶ 27    Nonetheless, relying on *People v. Laugharn*, 233 Ill. 2d 318 (2009), *People v. Clemons*, 2011 IL App (1st) 102329, and *People v. Mingo*, 403 Ill. App. 3d 968 (2010), defendant argues that Rules 105 and 106 govern petitions to revoke fines.

¶ 28    Both *Laugharn* and *Clemons* concerned petitions for relief from judgments under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2018)). At issue in *Laugharn* was whether a trial court could *sua sponte* dismiss a section 2-1401 petition as untimely before the expiration of the 30 days in which the State could answer or otherwise plead. *Laugharn*, 233 Ill. 2d at 321, 323. Our supreme court held that the dismissal was premature. *Id.* at 323. Specifically, relying on Rules 105 and 106, the court determined that "[t]he circuit court's dismissal short-circuited the proceedings and deprived the State of the time it was entitled to answer or otherwise plead." *Id.*

¶ 29    Similarly, in *Clemons*, the defendant filed a section 2-1401 petition to enforce a plea agreement. *Clemons*, 2011 IL App (1st) 102329, ¶ 1. Less than 30 days after filing the petition, the trial court *sua sponte* dismissed the petition. *Id.* ¶ 6. The appellate court determined that, like the 2-1401 petition filed in *Laugharn*, the court *sua sponte* dismissed defendant's petition prematurely because the dismissal was before the State's 30-day time to respond expired. *Id.* ¶ 15.

¶ 30 *Laugharn* and *Clemons* are unpersuasive here. There, the defendants filed 2-1401 petitions. The plain language of Rule 106 indicates that Rule 105 governs the disposition of section 2-1401 petitions. As noted, these rules do not govern petitions to revoke fines under section 5-9-2 of the Corrections Code.

¶ 31 Defendant argues that *Mingo* supports his position that, like section 2-1401 petitions, petitions to revoke fines are governed by Rules 105 and 106. In *Mingo*, we considered whether a petition to revoke fines must be brought in the trial court within 30 days after the final judgment for the trial court to have jurisdiction over the petition. *Mingo*, 403 Ill. App. 3d at 970. We determined that it was not necessary because a petition to revoke fines, like a petition brought under section 2-1401 of the Civil Code, is a freestanding collateral action. *Id.* at 972.

¶ 32 We cannot conclude from *Mingo* that Rules 105 and 106 govern petitions to revoke fines. Although a petition to revoke fines and a 2-1401 petition are collateral proceedings, this similarity is insufficient to establish that Rules 105 and 106 also apply to petitions to revoke fines. We could not read Rules 105 and 106 as encompassing petitions to revoke fines unless we read into those rules conditions that our supreme court did not provide. As noted, this is something we cannot do. *Roberts*, 214 Ill. 2d at 116.

¶ 33 In reaching this conclusion, we observe that defendant's reply brief argues for the first time that "[r]uling on the merits of the defendant's petition to revoke fines without first waiting for a response from the State, and without giving the defendant notice and an opportunity to be heard, presents a classic example of denial of due process." Because defendant's initial brief did not raise this issue, we will not consider it. See Ill. S. Ct. R. 341(h)(7) (eff. Nov. 1, 2017) ("Points not argued [in the appellant's initial brief] are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing."); see also *People v. Taylor*, 2019 IL App (1st) 160173,

¶ 41 (defendant forfeited due process argument raised for first time in reply brief). That said, it is difficult to see how *defendant* was denied due process because the trial court ruled on his petition to revoke fines without the State's input. More to the point, the State was denied the opportunity to be heard, not defendant.

¶ 34    We conclude that Rules 105 and 106 do not govern the disposition of petitions to revoke fines. Thus, the trial court did not err in *sua sponte* denying defendant's petition before 30 days had passed from its filing.

¶ 35                        C. Denial of Petition to Revoke Fines

¶ 36    We turn now to defendant's argument that the trial court nonetheless erred in denying his petition to revoke his fines. Before doing so, we note that even though the trial court—a court of competent jurisdiction—has twice previously ruled that defendant failed to establish good cause, the State has not argued that *res judicata* bars our review of defendant's latest petition. Of course, *res judicata* is an affirmative defense that might be forfeited if not raised (*Schloss v. Jumper*, 2014 IL App (4th) 121086, ¶ 18), and here we find that it was forfeited.

¶ 37    Because *res judicata* does not bar us from addressing the merits, we next consider whether the court should have granted defendant's petition to revoke his fines. Defendant argues, among other things, that his petition should have been granted because *all fines*—except those imposed under Chapter 15 of the Illinois Vehicle Code (see 625 ILCS 5/15-101 to 15-319 (West 2010) (a chapter addressing weight and load limits))—are subject to revocation under section 5-9-2 of the Corrections Code if good cause is shown. 730 ILCS 5/5-9-2 (West 2018). The State argues that only *discretionary* penal fines imposed under the Corrections Code may be revoked under section 5-9-2. Thus, according to the State, if a discretionary fine is not imposed under the Corrections

Code, like the fines imposed on defendant here, it may not be revoked under section 5-9-2, regardless of whether good cause is shown.

¶ 38     Whether the fines imposed here are subject to revocation requires us to interpret section 5-9-2 of the Corrections Code. In doing so, we again follow well-settled rules of statutory construction outlined above. Additionally, under those rules, "if the language in the statute *** is susceptible to being interpreted in more than one way by reasonably well-informed people, the statute *** is ambiguous." *People v. Martino*, 2012 IL App (2d) 101244, ¶ 26. "In such instances, a court may consider extrinsic aids of construction in discerning the legislative authority's intent." *Id.* "We must construe the statute *** to avoid rendering any part of it meaningless or superfluous." *Id.* "Additionally, we cannot view words and phrases in isolation, but, rather, we must consider them in light of other relevant provisions." *Id.* "We may also consider the consequences that would result from construing the statute *** one way or the other, and, in doing so, we must presume that the legislative authority did not intend absurd, inconvenient, or unjust consequences." *Id.* As noted above, we review *de novo* issues involving statutory interpretation. *Id.*

¶ 39     Mindful of those principles, we again turn to interpret section 5-9-2 of the Corrections Code. As noted above, that section provides: "Except as to fines established for violations of Chapter 15 of the *** Vehicle Code, the court, upon good cause shown, may revoke the fine or the unpaid portion or may modify the method of payment." 730 ILCS 5/5-9-2 (West 2018).

¶ 40     At issue is what the term "fines" means, as referenced in section 5-9-2 of the Corrections Code. One could read section 5-9-2 as limiting the revocation of fines to all fines except those imposed under Chapter 15 of the Vehicle Code. However, one could also read section 5-9-2 as limiting the revocation of fines to those discretionary penal fines imposed for violating the law but excluding fines imposed under Chapter 15 of the Vehicle Code.

¶ 41    In resolving what the term "fine" means, we find instructive *People v. Bennett*, 144 Ill. App. 3d 184 (1986). There, the defendant pleaded guilty to battery and resisting a peace officer. *Id.* When the court sentenced the defendant, it imposed a $45 fine under the Violent Crime Victims Assistance Act (Victims Act) (725 ILCS 240/10 (West 2018) (formally Ill. Rev. Stat. 1991, ch. 70, ¶ 510)). *Bennett*, 144 Ill. App. 3d at 184-85. The defendant neither moved to withdraw his plea nor filed a notice of appeal. *Id.* at 185. Later, the State moved to extend the defendant's time to pay his fine. *Id.* Although the trial court could have considered at the hearing on the State's motion whether to reduce or revoke the defendant's fine under section 5-9-2 of the Corrections Code, the court left the $45 fine intact. *Id.* at 185-86. The defendant appealed. *Id.* at 185.

¶ 42    On appeal, the defendant argued that his $45 fine should have been revoked. *Id.* at 186. The appellate court disagreed. *Id.* The court determined:

"[W]e conclude that section 5-9-2 refers to a penal fine imposed under the *** Corrections [Code]. The 'fine' referred to in this provision clearly refers to the penalties authorized in section 5-9-1 [citation]. By contrast, a fine payable to the Violent Crime Victims Assistance Fund is clearly mandatory and 'in addition to' a fine imposed under the *** Corrections [Code]. [Citation]. Moreover, the Violent Crime Victims Assistance Act contains no suggestion that the guidelines of the *** Corrections [Code] may apply to a fine levied under the Victims Act. Finally, the Victims Act seeks to compensate victims of violent crime; this goal would be thwarted by applying section 5-9-2 to excuse fines such as that owed by the present defendant.

We do not believe that section 5-9-2 may be used to circumvent the mandatory nature of a fine under the Victim[ ]s Act. Accordingly, the trial court did not err in failing to reduce or revoke the defendant's fine." *Id.*

¶ 43    Here, as in *Bennet*, we determine that the term "fine" referred to in section 5-9-2 means the discretionary penal fines authorized by section 5-9-1 of the Corrections Code (730 ILCS 5/5-9-1 (West 2018)). If, as defendant suggests, "fine" referred to the mandatory fines imposed on him, section 5-9-2 of the Corrections Code would run afoul of the provisions mandating that the fines imposed here must be assessed. Like in *Bennet*, all the fines imposed on defendant *had* to be imposed *in addition* to any *penal* fine imposed under the Corrections Code. See *Jones*, 223 Ill. 2d at 593, 599 (Trauma Center fee and Spinal Cord fund are mandatory fines); *People v. Millsap*, 2012 IL App (4th) 110668, ¶¶ 30-31 (State Police and Child Advocacy Center fees are mandatory fines); *People v. O'Laughlin*, 2012 IL App (4th) 110018, ¶ 12 (Serious Traffic Violation fee is a mandatory fine); *People v. Folks*, 406 Ill. App. 3d 300, 305 (2010) (Drug Court/Mental Health Court fund is a mandatory fine); *People v. Jones*, 397 Ill. App. 3d 651, 660 (2009) (Court Fund fee is a mandatory fine); *People v. Diaz*, 377 Ill. App. 3d 339, 351 (2007) (DUI Tech fund of $1000 is a mandatory fine).

¶ 44    Other Corrections Code provisions support our position that the fines referred to in section 5-9-2 are discretionary penal fines. Section 5-9-1 of the Corrections Code (730 ILCS 5/5-9-1 (West 2018)) is entitled "Authorized fines." Section 5-9-1(a) provides that "[a]n offender may be sentenced to pay a fine as provided in Article 4.5 of Chapter V [730 ILCS 5/5-4.5-5 *et seq.* (West 2018)]." *Id.* § 5-9-1(a). Article 4.5 of Chapter V concerns "General Sentencing Provision[s]." *Id.* § 5-4.5-5. The "General Sentencing Provision[s]" include sentencing for felonies and misdemeanors. *Id.* Under these "General Sentencing Provision[s]," a trial court may impose on a defendant convicted of a felony or a misdemeanor a fine in addition to a sentence. See, *e.g.*, *id.* § 5-4.5-45(e) (fine for a Class 4 felony may be imposed); *id.* § 5-4.5-65(e) (fine for Class C

misdemeanor may be imposed). As relevant here, it is these discretionary penal fines, the fines imposed under Article 4.5 of Chapter V, to which section 5-9-2 refers.

¶ 45    In reaching our conclusion, we note that, when *Bennet* was decided in 1984, section 5-9-2 of the Corrections Code did not contain any language referring to Chapter 15 of the Vehicle Code. In 1984, section 5-9-2 simply provided: "The court, upon good cause shown, may revoke the fine or the unpaid portion or may modify the method of payment." Ill. Rev. Stat. 1983, ch. 38, ¶ 1005-9-2.

¶ 46    We have examined the legislative history hoping that it would justify excluding fines imposed under Chapter 15 of the Vehicle Code that relate to size, weight, and load regulations. Unfortunately, the legislative history provided no definitive guidance. We observe, however, that the regulations in Chapter 15 of the Vehicle Code typically apply to commercial vehicles, and violations frequently add up to thousands of dollars in fines. Nevertheless, we cannot conclude that the legislature, by excluding fines imposed under Chapter 15 of the Vehicle Code, meant to expand petitions to revoke fines to those mandatory fines imposed on defendant here.

¶ 47    Instructive on that point is *People v. Ullrich*, 135 Ill. 2d 477 (1990). There, the defendant was convicted of driving an overweight vehicle on an elevated structure. *Id.* at 479. Although defendant was subject to mandatory fines and costs totaling $6385 under section 15-113(a) of the Vehicle Code (625 ILCS 5/15-113(a) (West 2018) (formally Ill. Rev. Stat. 1985, ch. 95 ½, ¶ 15-113), the trial court ultimately imposed a $100 fine. *Ullrich*, 135 Ill. 2d at 480. When the fine was imposed, section 5-9-1(d) of the Corrections Code (730 ILCS 5/5-9-1(d) (West 2018) (formally Ill. Rev. Stat. 1985, ch. 38, ¶ 1005-9-1))—which provides that a trial court may consider a defendant's financial circumstances in setting the amount of a fine—contained no language excluding fines imposed under Chapter 15 of the Vehicle Code. *Ullrich*, 135 Ill. 2d at 481.

¶ 48    The State appealed, and the appellate court affirmed. *Id.* at 482. The appellate court determined that "strict imposition of the fines required by section 15-113(a) of the Vehicle Code would be inconsistent with the requirement of section 5-9-1(d) of the Corrections Code that the [trial] court consider the [defendant's] financial situation when imposing a fine." *Id.* at 481-82. In doing so, the appellate court reasoned that "since the two statutes were inconsistent, the later statute, section 5-9-1(d) of the Corrections Code, implicitly amended the earlier statute, section 15-113(a) of the Vehicle Code." *Id.* at 482. Thus, the appellate court determined that the trial court *could* consider a defendant's financial situation in setting a fine under section 15-113(a) of the Vehicle Code. *Id.* When the appellate court rendered its decision, section 5-9-1(d) did not mention Chapter 15 of the Vehicle Code. *Id.* at 481.

¶ 49    The State appealed to our supreme court. *Id.* at 479. At issue was whether section 15-113(a) of the Vehicle Code was amended by implication by section 5-9-1(d) of the Corrections Code. *Id.* at 482. The supreme court noted that amendment by implication is disfavored and that a statute will be deemed amended by implication only if the terms of the latter statute are so inconsistent that the two statutes cannot stand together. *Id.* at 483. Accordingly, it determined that section 15-113(a) of the Vehicle Code was not amended by section 5-9-1(d) of the Corrections Code. *Id.* at 483. The court reasoned that (1) section 5-9-1(d) of the Corrections Code served a different purpose than section 15-113(a) of the Vehicle Code, and (2) section 5-9-1(d) of the Corrections Code applied to discretionary fines while section 15-113(a) of the Vehicle Code concerned mandatory fines. *Id.* at 484-85, 487.

¶ 50    On the second point, the court reasoned:

"Section 5-9-1 of the Corrections Code provides that an offender 'may be sentenced to pay a fine' and that a fine 'may be imposed' in addition to a sentence of conditional discharge,

probation, or imprisonment [citation]. The word 'may' ordinarily connotes discretion. [Citation.] The legislature's use of the word 'may' in section 5-9-1 of the Corrections Code stands in contrast to the language of the mandatory fine provision of section 15-113(a) of the Vehicle Code, which provides that offenders 'shall be fined' according to the schedule provided in that section. We find that *** section 5-9-1 of the Corrections Code was intended to apply to discretionary fines and not to fixed, mandatory fines." *Id.* at 484-85. The court also noted that "[i]t is apparent that the legislature intended section 5-9-1(d) of the Corrections Code to apply only to those situations where the legislature has given the [trial] court discretion to determine the amount of a fine, for example, where the legislature has provided a range of permissible fines." *Id.* at 485. Our supreme court, like the trial and appellate courts, applied the 1985 version of section 5-9-1(d) of the Corrections Code, which was in effect when the fine was imposed. *Id.* at 481.

¶ 51    *Ullrich* illustrates why section 5-9-2 of the Corrections Code does not apply to the mandatory fines imposed on defendant here. First, although section 15-113(a) of the Vehicle Code concerns mandatory fixed fines, other sections of Chapter 15 of the Vehicle Code grant the trial court discretion to impose a fine within a fixed range. See 625 ILCS 5/15-113.1 (West 2018) (fine imposed of not less than 10 cents per pound for each pound that the gross weight of the vehicle exceeds the gross weight of vehicles permissible under section 15-111 of the Vehicle Code (*id.* § 15-111)); *id.* § 15-113.2 (an owner or driver of a vehicle must be fined within a discretionary range for each pound of excess axle-weight that exceeds the weight authorized by the permit issued to the owner); *id.* § 15-113.3 (providing for a range of fines that must be imposed when the vehicle's gross weight exceeds the permit's). Given that discretion, the legislature may very well have specifically excluded fines imposed under Chapter 15 of the Vehicle Code, which exclusion

includes the fixed mandatory fines and the fines the trial court must impose within a discretionary range. None of the fines imposed on defendant here, which are not specifically excluded under either section 5-9-1 or section 5-9-2 of the Corrections Code, are similarly discretionary.

¶ 52    Moreover, we presume that the legislature amended section 5-9-1(d) in response to the appellate court's decision in *Ullrich*. Three months before our supreme court decided *Ullrich*, the legislature amended section 5-9-1(d) of the Corrections Code. After the amendment, that section, which included the exception under Chapter 15 of the Vehicle Code, provided:

> "(d) In determining the amount and method of payment of a fine, *except for those fines established for violations of Chapter 15 of the \*\*\* Vehicle Code*, the court shall consider:

>> (1) the financial resources and future ability of the offender to pay the fine; and

>> (2) whether the fine will prevent the offender from making court ordered restitution or reparation to the victim of the offense; and

>> (3) in a case where the accused is a dissolved corporation and the court has appointed counsel to represent the corporation, the costs incurred either by the county or the State for such representation." (Emphasis added.) Ill. Rev. Stat. 1989, ch. 38, ¶ 1005-9-1(d).

¶ 53    Subsequently, in 1992, the legislature added language to section 5-9-2 of the Corrections Code. That section, which included the exception under Chapter 15 of the Vehicle Code, provided, as it does now, that: "*Except as to fines established for violations of Chapter 15 of the \*\*\* Vehicle Code*, the court, upon good cause shown, may revoke the fine or the unpaid portion or may modify the method of payment." (Emphasis added.) Ill. Rev. Stat. 1991, ch. 38, ¶ 1005-9-2.

¶ 54    With the 1992 amendment, sections 5-9-1 and 5-9-2, which already had complementary provisions allowing discretionary revocation of discretionary fines, now have parallel exceptions. Specifically, section 5-9-1 does not apply to the imposition of fines under Chapter 15 of the Vehicle Code, and section 5-9-2 does not authorize revocation of fines imposed under Chapter 15 of the Vehicle Code. The legislature, by adding this exclusion to section 5-9-2, fixed the conflict between sections 5-9-1 and 5-9-2 of the Corrections Code that otherwise would have existed between 1989 and 1992. See *Stone v. Department of Employment Security Board of Review*, 151 Ill. 2d 257, 262 (1992) ("The presumption is that statutes which relate to one subject were intended by the legislature to be consistent and harmonious with each other.").

¶ 55    Given the sequence of events, we believe that the amendment to section 5-9-1 was intended strictly to enact *Ullrich*'s holding that the standards delineated in section 5-9-1 for imposing discretionary fines do not apply to the imposition of either (1) the fixed, mandatory fines or (2) the discretionary fines within a fixed range authorized by Chapter 15 of the Vehicle Code. Moreover, the amendment to section 5-9-2 appears to have been designed to track the amendment to section 5-9-1 and clarify that section 5-9-2 does not authorize revocation of fines imposed under Chapter 15 of the Vehicle Code. Thus, under section 5-9-2 of the Corrections Code, revocation of fines is allowed only for the discretionary penal fines imposed under the Corrections Code. Therefore, we cannot apply section 5-9-2 to all fines except those imposed under Chapter 15 of the Vehicle Code. That would effectively undo the holding in *Bennet* and, more importantly, subvert the holding in *Ullrich*—that the parallel provision of section 5-9-1 of the Corrections Code does not apply to mandatory fines. See *People v. Harris*, 69 Ill. App. 3d 118, 123 (1979) ("[A] decision by the [Illinois] supreme court, and its implications for the construction of [statutes], is binding upon th[e] appellate courts.]").

¶ 56    Because we have determined that defendant's remaining fines were not subject to revocation, we need not determine whether his petition demonstrated "good cause."

¶ 57                                III. CONCLUSION

¶ 58    In sum, we determine that the trial court (1) did not prematurely deny defendant's petition to revoke fines under section 5-9-2 of the Corrections Code, and (2) could not lawfully revoke defendant's remaining fines. So, for the reasons stated, we affirm the judgment of the circuit court of Du Page County.

¶ 59    Affirmed.

**No. 2-19-0474**

| | |
|---|---|
| **Cite as:** | *People v. Reyes*, 2022 IL App (2d) 190474 |
| **Decision Under Review:** | Appeal from the Circuit Court of Du Page County, No. 11-CF-2428; the Hon. Jeffery S. MacKay, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Thomas A. Lilien, and Josette Skelnik, of State Appellate Defender's Office, of Elgin, for appellant. |
| **Attorneys for Appellee:** | Robert B. Berlin, State's Attorney, of Wheaton (Lisa Anne Hoffman and Kristin M. Schwind, Assistant State's Attorneys, of counsel), for the People. |