**2023 IL 128461**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

(Docket No. 128461)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v.
JORGE L. REYES, Appellant.

*Opinion filed October 5, 2023.*

JUSTICE HOLDER WHITE delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Neville, Overstreet, Cunningham, and Rochford concurred in the judgment and opinion.

Justice O'Brien specially concurred, with opinion.

## OPINION

¶ 1     Petitioner, Jorge L. Reyes, was convicted of aggravated driving under the influence and sentenced to 36 months in prison. As a consequence of his conviction, petitioner was assessed various fines and fees, including mandatory statutory fines. Years later, petitioner filed three petitions under section 5-9-2 of the Unified Code

of Corrections (Unified Code) (730 ILCS 5/5-9-2 (West 2018)) seeking to have his fines revoked. Each of these petitions was denied because the circuit court found petitioner failed to show good cause to revoke his fines. The appellate court affirmed. 2022 IL App (2d) 190474. Petitioner appeals the denial of the last of these petitions and asks us to decide whether (1) the rules of civil procedure that apply to petitions under section 2-1401 of the Code of Civil Procedure (Procedure Code) (735 ILCS 5/2-1401 (West 2018)) apply to petitions under section 5-9-2 of the Unified Code, (2) section 5-9-2 allows a circuit court to revoke mandatory fines, and (3) the circuit court abused its discretion in denying his petition. For the following reasons, we answer these questions in the negative and affirm the judgment of the appellate court.

¶ 2                                    I. BACKGROUND

¶ 3        In October 2011, petitioner was indicted on one count of aggravated driving under the influence in violation of section 11-501(a)(2) and (d)(2)(D) of the Illinois Vehicle Code (625 ILCS 5/11-501(a)(2), (d)(2)(D) (West 2010)). In May 2012, petitioner pleaded guilty pursuant to a plea agreement and was sentenced to 36 months in prison. The written sentencing order noted: "For count 0001 pay $1,605.00. This is costs only." The order further reflected that petitioner was required to pay the following assessments totaling $1670:

| | |
|---|---|
| COURT AUTOMATION FEE | $15 |
| STATE POLICE FEE | $15 |
| DOCUMENT STORAGE FEE | $15 |
| CLERKS FEES | $125 |
| DRUG COURT-MENTAL HEALTH COURT FUND | $10 |
| STATE'S ATTORNEY FEES | $30 |
| COURT FUND FEE | $30 |
| VIOLENT CRIME VICTIMS ASSISTANCE FUND | $25 |

| | |
|---|---|
| COURT SECURITY FEE | $25 |
| SERIOUS TRAFFIC VIOLATION FEE | $35 |
| COUNTY JAIL MEDICAL COSTS FUND FEE | $10 |
| TRAUMA CENTER FEE | $100 |
| CHILD ADVOCACY CENTER FEE | $30 |
| DUI TECH FUND | $1000 |
| DNA ANALYSIS FEE | $200 |
| SPINAL CORD FUND | $5 |

¶ 4 Petitioner was given credit toward these assessments in the amount of $65 ($10 for the drug court and mental health court fund (55 ILCS 5/5-1101(d-5) (West 2010)), $25 for the Violent Crime Victims Assistance Fund (725 ILCS 240/10(c) (West 2010)), and $30 for the Child Advocacy Center fee (55 ILCS 5-1101(f-5) (West 2010))), which reduced the amount he owed to $1605.

¶ 5 In July 2018, a little more than six years after the sentencing order was entered, petitioner wrote a letter to the circuit clerk asking for his case number so that he could pay fines related to his "[l]icense, [d]riving [l]icense tickets." At the time petitioner sent this letter, he was incarcerated for a conviction in an unrelated case. The circuit clerk responded in writing and listed three case numbers and the outstanding amounts owed in each case. In this case, the circuit clerk noted petitioner owed $2086.50.

¶ 6 About a month later, petitioner filed a petition asking the court to revoke the fines in his case pursuant to section 5-9-2 of the Unified Code. 730 ILCS 5/5-9-2 (West 2018). In support, petitioner averred he was incarcerated and indigent, earning $10 a month, which he used to purchase personal items such as soap, deodorant, and toothpaste. Petitioner stated he wanted to have a fresh start upon his release from prison and that the revocation of the fines he owed would grant him that fresh start. The court denied the petition the day after it was filed, finding that petitioner "had five years to try to pay the fines and costs, and he didn't do it."

¶ 7        In February 2019, petitioner filed a second petition asking the circuit court to revoke the fines in his case pursuant to section 5-9-2 of the Unified Code. *Id.* As before, petitioner averred that he was indigent and wanted a fresh start when he left prison. The court denied the petition four days later, finding petitioner had failed to show good cause to revoke his fines.

¶ 8        On May 6, 2019, petitioner filed his third petition asking the court to revoke the fines in his case pursuant to section 5-9-2. *Id.* Petitioner again explained that he was incarcerated and made $15 a month from the State, which he used to purchase personal items such as soap, deodorant, and toothpaste. Petitioner asked the court to revoke his fines or "at least modify" them because he was indigent and would be homeless and living in a shelter upon his release from prison. He added that he wanted a fresh start when he was released from prison and the revocation of his fines would provide him with an opportunity to have that. Petitioner also filed an application to proceed as a poor person and indicated he had $200 in his prison trust account. The notice of filing petitioner attached to his petition noted that he served, through the United States mail, copies of the petition and the application to proceed as a poor person to the circuit clerk of Du Page County and the state's attorney.

¶ 9        On May 21, 2019, the circuit court called petitioner's case and addressed his petition. An assistant state's attorney was present in court, but petitioner was neither present nor represented by counsel at this hearing. The court informed the assistant state's attorney that petitioner had filed a "[petition] pursuant to 730 ILCS 5/5-9-2 asking to have the fines revoked" but had failed to show good cause for the revocation of his fines. Consequently, the court denied the petition. The court entered a written order indicating the petition was denied because petitioner failed to show good cause. Petitioner filed a notice of appeal.

¶ 10        On appeal, petitioner argued that (1) the circuit court's order denying his petition was premature because it was entered before the petition was ripe for adjudication and (2) the court abused its discretion in finding petitioner had not shown good cause for revocation of his fines where the only evidence before the court was that petitioner lacked the ability to pay those fines and that paying would impose a hardship on him. While the appeal was pending, the appellate court, on its own motion, remanded the case for the limited purpose of allowing petitioner to

file a motion asserting that his "fees" were improper under Illinois Supreme Court Rule 472 (eff. May 17, 2019). 2022 IL App (2d) 190474, ¶ 11.

¶ 11 On remand, the parties filed an agreed motion, asserting that petitioner was entitled to a *per diem* credit of $5 for each of the 200 days he spent in presentence custody. The parties agreed that defendant was entitled to a *per diem* credit toward the following charges:

| | |
|---|---|
| STATE POLICE FEE | $15 |
| DRUG COURT/MENTAL HEALTH COURT FUND | $10 |
| COURT FUND FEE | $30 |
| SERIOUS TRAFFIC VIOLATION FEE | $35 |
| CHILD ADVOCACY CENTER FEE | $30 |
| DUI TECH FUND | $1000 |

The parties agreed petitioner was entitled to an additional credit of $960 against these charges.

¶ 12 The circuit court allowed the agreed motion, and petitioner was granted the additional credit toward his eligible fines. Although petitioner was not entitled to a *per diem* credit against the Violent Crime Victims Assistance Fund fine, the court's order indicated he received a $25 credit. *Id.* The appellate court noted that, although this $25 credit was given in error, it would stand, as a court cannot deny a credit already received. *Id.* (citing *People v. Warren*, 2016 IL App (4th) 120721-B, ¶ 83). In sum, with all pertinent *per diem* credits applied toward his fines, petitioner's remaining balance on his fines was $135. The case returned to the appellate court, which determined that, because petitioner still had $135 in outstanding fines, it would consider the issues raised before the appellate court remanded the appeal. *Id.* ¶ 12.

¶ 13 The appellate court first addressed petitioner's argument that the denial of his petition was premature because under Illinois Supreme Court Rule 105 (eff. Jan. 1, 2018) and Rule 106 (eff. Aug. 1, 1985), the circuit court could not *sua sponte* deny the petition until after 30 days from its filing. 2022 IL App (2d) 190474, ¶ 21. The

appellate court reviewed the statutory language of section 5-9-2 and found that it did not indicate which rules governed the disposition of petitions to revoke fines. *Id.* ¶ 23. The court then reviewed Illinois Supreme Court Rule 104 (eff. Jan. 1, 2018), Rule 105 (eff. Jan. 1, 2018), and Rule 106 (eff. Aug. 1, 1985). 2022 IL App (2d) 190474, ¶¶ 24-34. The court held that Rules 105 and 106 did not govern the disposition of petitions to revoke fines and that the circuit court did not err when it *sua sponte* denied petitioner's petition. *Id.* ¶ 34.

¶ 14     Addressing petitioner's second contention of error, the appellate court held that section 5-9-2 only permits revocation of the discretionary penal fines imposed under section 5-9-1. *Id.* ¶ 55. Therefore, because the fines imposed on petitioner were not discretionary penal fines under section 5-9-1, the court declined to determine whether petitioner demonstrated " 'good cause' " to have his fines revoked. *Id.* ¶ 56.

¶ 15     Petitioner filed a petition for leave to appeal to this court, and we allowed that petition. Ill. S. Ct. R. 315 (eff. Oct. 1, 2021).

¶ 16                                   II. ANALYSIS

¶ 17     Before this court, petitioner raises three arguments. First, he argues that a petition to revoke fines under section 5-9-2 of the Unified Code (730 ILCS 5/5-9-2 (West 2018)), like a petition for relief from judgment under section 2-1401 of the Procedure Code (735 ILCS 5/2-1401 (West 2018)), is not ripe for adjudication until 30 days after it is filed and served on the State. Second, he argues the circuit court erred in holding that section 5-9-2 only allows for the revocation of discretionary fines specifically listed in section 5-9-1 of the Procedure Code (730 ILCS 5/5-9-1 (West 2018)). Third, he argues the court abused its discretion in denying his section 5-9-2 petition where he showed good cause for his fines to be revoked. We address each argument in turn.

¶ 18                    A. Illinois Supreme Court Rule 106 Does Not Extend the
                        Procedural Rules Applicable to Section 2-1401 Petitions to
                                        Section 5-9-2 Petitions

¶ 19      Petitioner's first contention requires us to determine whether the procedural rules applicable to section 2-1401 petitions are applicable to section 5-9-2 petitions and whether the circuit court violated Rules 105 and 106 when it dismissed the petition within 15 days after it was filed. We begin by interpreting these statutes and rules and reviewing their applicability to this case. In doing so, we aim to ascertain and give effect to the drafters' intention. *People v. Marker*, 233 Ill. 2d 158, 165 (2009). The most reliable indicator of intent is the rule's plain language, which we must give its plain and ordinary meaning. *Id.* The interpretation of this court's rules is controlled by the same principles applicable to the construction of statutes. *People v. Thompson*, 238 Ill. 2d 598, 606 (2010). As with statutes, we review the interpretation of a supreme court rule *de novo*. *Id.*

¶ 20      The crux of petitioner's first argument is as follows. In *People v. Mingo*, 403 Ill. App. 3d 968, 970-71 (2010), section 5-9-2 petitions were described as "freestanding, collateral actions, such as postconviction petitions (725 ILCS 5/122-1 (West 2008)) or petitions brought under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2008))." According to petitioner, this means the procedural rules that apply to section 2-1401 petitions should be applied to section 5-9-2 petitions. However, *Mingo* did not hold that all rules and procedures applicable to section 2-1401 petitions are to be applied to section 5-9-2 petitions. Nor could *Mingo* do so, as nothing in either statutory provision compels such a holding.

¶ 21      Section 5-9-2 states that, "[e]xcept as to fines established for violations of Chapter 15 of the Illinois Vehicle Code, the court, upon good cause shown, may revoke the fine or the unpaid portion or may modify the method of payment." 730 ILCS 5/5-9-2 (West 2018). As petitioner acknowledges, section 5-9-2 does not set forth the procedure to be followed or the rules that apply when a person files a petition to revoke fines. Nevertheless, relying heavily on *Mingo*, petitioner argues that the circuit court was required to wait 30 days before ruling on his petition, because that is the procedure employed in cases involving section 2-1401 petitions.

¶ 22 Like section 5-9-2, section 2-1401 does not set forth the procedures that govern petitions for relief from judgment under the section. 735 ILCS 5/2-1401 (West 2018). However, "[t]his court has consistently held that proceedings under section 2-1401 are subject to the usual rules of civil practice." *People v. Vincent*, 226 Ill. 2d 1, 8 (2007). Under these rules, we have held that section 2-1401 petitions are not ripe for adjudication until after the 30-day period specified in Rule 105(a) (Ill. S. Ct. R. 105(a) (eff. Jan. 1, 1989)) has elapsed. *People v. Laugharn*, 233 Ill. 2d 318, 323 (2009).

¶ 23 Illinois Supreme Court Rule 105(a) (eff. Jan. 1, 2018) provides:

"If new or additional relief, whether by amendment, counterclaim, or otherwise, is sought against a party not entitled to notice under Rule 104, notice shall be given him as herein provided. The notice shall be captioned with the case name and number and shall be directed to the party. It shall state that a pleading seeking new or additional relief against him has been filed and that a judgment by default may be taken against him for the new or additional relief unless he files an answer or otherwise files an appearance in the office of the clerk of the court within 30 days after service, receipt by certified or registered mail, or the first publication of the notice, as the case may be, exclusive of the day of service, receipt or first publication. Except in case of publication, a copy of the new or amended pleading shall be attached to the notice, unless excused by the court for good cause shown on *ex parte* application."

¶ 24 Rule 105, which is titled "Additional Relief Against Parties in Default-Notice," generally applies to parties that are in default. Ill. S. Ct. R. 105 (eff. Jan. 1, 2018). However, pursuant to Rule 106, "[n]otice of the filing of a petition under section 2-1401, section 2-1601 or section 12-183(g) of the Code of Civil Procedure shall be given by the same methods provided in Rule 105 for the giving of notice of additional relief to parties in default." Ill. S. Ct. R. 106 (eff. Aug. 1, 1985).

¶ 25 Petitioner argues that Illinois Supreme Court Rules 105 and 106, which provide the notice requirements for a section 2-1401 petition, are the rules of civil practice that should apply to the proceedings initiated by his section 5-9-2 petition. However, other than *Mingo*, petitioner cites no other authority for his argument that these rules apply to his petition. He has thus failed to persuasively establish that Rules 105 or 106 apply to his petition under section 5-9-2.

¶ 26 By its plain language, Rule 106 extends the requirements of Rule 105(a) to specific proceedings, none of which are proceedings under section 5-9-2. *Id.* Without Rule 106, the notice requirements of Rule 105(a) would only apply if the State was a party in default. Since petitioner does not argue the State was in default and has failed to show that Rule 105 otherwise applies, we hold the circuit court did not err in ruling on the petition before the 30-day period specified in Rule 105. See *Vincent*, 226 Ill. 2d at 12 ("Illinois cases *** recognize that a trial court may, on its own motion, dispose of a matter when it is clear on its face that the requesting party is not entitled to relief as a matter of law.").

¶ 27 We note that in *Vincent* this court expressly held that "responsive pleadings are no more required in section 2-1401 proceedings than they are in any other civil action." *Id.* at 9. This court rejected "the notion that the trial court was prohibited from acting because of the lack of a responsive pleading from the State." *Id.* Therefore, petitioner's additional argument—that in applying the rules applicable to section 2-1401 petitions, the State would be "required to respond" to his petition—fails. The State is not required to file any responsive pleadings in section 2-1401 proceedings or in any other civil proceedings. *Id.*

¶ 28                    B. Fines That May Be Revoked Under Section 5-9-2

¶ 29 Petitioner's second contention requires us to determine which type of fines can be revoked or modified under section 5-9-2. 730 ILCS 5/5-9-2 (West 2018). This requires us to interpret section 5-9-2, which presents a question of law and is subject to *de novo* review. *People v. Clark*, 2019 IL 122891, ¶ 17.

¶ 30 The primary objective of statutory construction is to ascertain and give effect to the true intent of the legislature. *Id.* ¶ 18. The best indicator of the legislature's intent is the statutory language, given its plain and ordinary meaning. *People v. Hartfield*, 2022 IL 126729, ¶ 68. The statute must be viewed as a whole, and as such, this court construes words and phrases not in isolation but relative to other pertinent statutory provisions. *Id.* Where the statutory language is clear and unambiguous, it should be applied without resort to additional aids of statutory construction. *People v. Stewart*, 2022 IL 126116, ¶ 13. However, if the statute is ambiguous, a reviewing court may consider extrinsic aids of construction, such as legislative history, to discern the legislative intent. *Id.* A statute is deemed

ambiguous if it is capable of being understood by reasonably well-informed persons in two or more different ways. *Id.*

¶ 31    As noted above, section 5-9-2, which is titled "Revocation of a Fine," provides: "Except as to fines established for violations of Chapter 15 of the Illinois Vehicle Code, the court, upon good cause shown, may revoke the fine or the unpaid portion or may modify the method of payment." 730 ILCS 5/5-9-2 (West 2018). The parties disagree as to which fines can be forgiven under section 5-9-2. Petitioner argues this section applies to all fines, except those imposed for violations of Chapter 15 of the Vehicle Code (625 ILCS 5/ch. 15 (West 2018)), that may be imposed on a defendant because of his criminal conviction—whether discretionary or mandatory. The State disagrees and argues that "the fine" refers only to the discretionary penal fines imposed under section 5-9-1. 730 ILCS 5/5-9-1 (West 2018). We agree with the appellate court that section 5-9-2 is ambiguous and capable of being interpreted in two or more different ways. 2022 IL App (2d) 190474, ¶ 40.

¶ 32    Ordinarily, when faced with an ambiguous statute, we would review the legislative history and transcripts of legislative debates that may serve as a starting point to determine the legislative intent. *People v. Collins*, 214 Ill. 2d 206, 214 (2005). In this case, the legislative history offers little guidance as to the legislative intent because there are no recorded debates on section 5-9-2. Where the statutory language is ambiguous and the legislative history is not determinative, this court must attempt to resolve the conflict by reference to the entire statute. *Business & Professional People for the Public Interest v. Illinois Commerce Comm'n*, 146 Ill. 2d 175, 208 (1991).

¶ 33    Section 5-9-2 is part of Chapter V, article 9, of the Unified Code, which authorizes fines that are imposed upon conviction. 730 ILCS 5/ch. V, art. 9 (West 2018). Section 5-9-1 authorizes fines that may be imposed as provided under article 4.5 of Chapter V of the Unified Code (*id.* ch. V, art. 4.5). *Id.* § 5-9-1. Article 4.5 authorizes various discretionary fines that may be imposed on a defendant upon conviction, depending on the offense classification. *Id.* ch. V, art. 4.5. Additional sections in article 9, many of which are currently repealed, authorize different fines and fees that may be imposed once a person is convicted of an offense. See *id.* ch. V, art. 9.

¶ 34 Read within the context of article 9, section 5-9-2 plainly allows the circuit court to revoke and modify fines that are imposed under the provisions of Chapter V, article 9, of the Unified Code. However, it would be contrary to the legislative intent to give the circuit court discretion to revoke a fine the court does not have the discretion to impose. See *People v. Ullrich*, 135 Ill. 2d 477, 485 (1990). Section 5-9-2 must therefore be read to allow the court to only revoke or modify discretionary fines under article 9. To interpret section 5-9-2 as allowing the circuit court to revoke mandatory fines would rewrite those fines to make them discretionary. This we cannot do, as we are not free to rewrite legislation or to ignore an express requirement contained in a statute. *People v. Palmer*, 148 Ill. 2d 70, 88 (1992).

¶ 35 Section 5-9-2 contains one exception—it excludes fines established for violations of Chapter 15 of the Vehicle Code—from the provisions of the section. 730 ILCS 5/5-9-2 (West 2018). Petitioner argues this exception means that section 5-9-2 should be applied to all fines except those fines established for violations of Chapter 15 of the Vehicle Code. We disagree with petitioner's reading of the statute as explained above. Our interpretation of section 5-9-2 is consistent with the exception for fines established for violations of Chapter 15 of the Vehicle Code.

¶ 36 Violations of Chapter 15 of the Vehicle Code can be petty offenses (625 ILCS 5/15-301(j) (West 2018)), business offenses (*id.* §§ 15-113.1, 15-113.2, 15-113.3), misdemeanors (*id.* § 15-109(c)), or Class 4 felony offenses (*id.* § 15-301(i)). Article 4.5 of the Unified Code authorizes discretionary fines for petty offenses, business offenses, misdemeanors, and felonies. 730 ILCS 5/5-4.5-75(a) (West 2018) (petty offenses); *id.* § 5-4.5-80(a) (business offenses); *id.* § 5-4.5-55(e) (Class A misdemeanors); *id.* § 5-4.5-50(b) (felonies). Section 5-4.5-50 (b), section 5-4.5-55 (e), section 5-4.5-75(a), and section 5-4.5-80(a) therefore authorize discretionary fines that may be imposed for violations of Chapter 15 of the Vehicle Code.

¶ 37 Section 5-9-1 authorizes the fines imposed under section 5-4.5-50(b), section 5-4.5-55(e), section 5-4.5-75(a), and section 5-4.5-80(a), and therefore section 5-9-2 would presumably apply to allow the circuit court to revoke or modify any discretionary fines imposed under these sections. However, because of the exception included in section 5-9-2, discretionary fines under section 5-4.5-50(b), section 5-4.5-55(e), section 5-4.5-75(a), and section 5-4.5-80(a) imposed for

- 11 -

violations of Chapter 15 of the Vehicle Code cannot be revoked or modified under section 5-9-2. The exception in section 5-9-2 does not increase a court's power to reach discretionary fines imposed under statutory provisions beyond Chapter V, article 9, of the Unified Code. Instead, the exception limits the court's power to revoke or modify discretionary fines for violations of Chapter 15 of the Vehicle Code under Chapter V, article 9, of the Unified Code.

¶ 38        In this case, the fines imposed on petitioner were authorized by various statutes as follows: state police fee (705 ILCS 105/27.3a(1.5) (West 2010)); drug court and mental health court fund (55 ILCS 5/5-1101(d-5) (West 2010)); court fund fee (*id.* § 5-1101(a)); Violent Crime Victims Assistance Fund (725 ILCS 240/10(c) (West 2010)); serious traffic violation fee (625 ILCS 5/16-104d (West 2010)); County Jail Medical Costs Fund fee (730 ILCS 125/17 (West 2010)); Trauma Center Fund fee (730 ILCS 5/5-9-1.1(b) (West 2010)); Child Advocacy Center fee (55 ILCS 5-1101(f-5) (West 2010)); State Police DUI Fund fee (625 ILCS 5/11-501.01(f) (West 2010)); and Spinal Cord Injury Paralysis Cure Research Trust Fund fee (730 ILCS 5/5-9-1.1(c) (West 2010)). Only two of these fines—the Trauma Center Fund and Spinal Cord Injury Paralysis Cure Research Trust Fund assessments—were fines imposed under Chapter V, article 9, of the Unified Code. However, because these fines were mandatory, the circuit court could not revoke or modify them under section 5-9-2. Therefore, petitioner could not obtain relief from his fines because section 5-9-2 did not apply to any of the fines imposed in his case.

¶ 39                          C. The Circuit Court Did Not Abuse Its
                              Discretion in Denying the Petition

¶ 40        Petitioner's third contention on appeal is that the circuit court abused its discretion in denying his section 5-9-2 petition where he showed good cause for his fines to be revoked. Considering our conclusions as to the application of section 5-9-2, we find the court had no discretion to revoke or modify the fines imposed on petitioner. Therefore, the court did not abuse its discretion in denying the petition.

¶ 41                           III. CONCLUSION

¶ 42        For the foregoing reasons, we affirm the judgment of the appellate court, which affirmed the circuit court's dismissal of petitioner's section 5-9-2 petition.

¶ 43        Affirmed.

¶ 44        JUSTICE O'BRIEN, specially concurring:

¶ 45        I specially concur because, although I agree with the disposition reached by the majority, I disagree with the reasoning used to reach the result. I find nothing in the plain language of the revocation statute that would limit its application to only discretionary penal fines.

¶ 46        To begin, I disagree that section 5-9-2 of the Unified Code of Corrections (730 ILCS 5/5-9-2 (West 2018)), which concerns revocation of fines, is ambiguous. *Supra* ¶ 31. Specifically, section 5-9-2 unambiguously states that all fines are revocable "[e]xcept as to fines established for violations of Chapter 15 of the Illinois Vehicle Code." 730 ILCS 5/5-9-2 (West 2018). The fact that the State offers a different interpretation of the statute—that favors it but is not based on its plain language—does not make the statute ambiguous. *Kagan v. Waldheim Cemetery Co.*, 2016 IL App (1st) 131274, ¶ 68 ("The parties' disagreement over the meaning of a statutory term does not render it ambiguous."). Because the statute is unambiguous, there was no need for the majority to look beyond the plain language to interpret its meaning.

¶ 47        I also disagree with the majority's interpretation that the revocation statute exempts all fines except discretionary penal fines imposed in section 5-9-1 of the Unified Code of Corrections (730 ILCS 5/5-9-1 (West 2018)) and Chapter 15 of the Illinois Vehicle Code (625 ILCS 5/ch. 15 (West 2018)). Section 5-9-1 concerns the imposition of discretionary penal fines. *People v. Ullrich*, 135 Ill. 2d 477, 484 (1990) (use of "may" in section 5-9-1 indicates the statute was intended to apply to discretionary fines). In determining that the revocation provision was limited to discretionary penal fines imposed under section 5-9-1, the majority explains that to do otherwise would make mandatory fines discretionary. *Supra* ¶ 34. In making

- 13 -

that determination, the majority fails to distinguish between the imposition of fines and the revocation of fines.

¶ 48     The revocation statute allows a defendant with good cause to seek to have his fines revoked. Section 5-9-2's "good cause" requirement is designed "to provide a defendant relief from fines when factors, external to the original proceedings, would warrant the revocation of the fines to ease a defendant's financial burden." *People v. Mingo*, 403 Ill. App. 3d 968, 972 (2010). A defendant's financial circumstances and ability to pay are also considered under section 5-9-1(d)(1) before imposition of those fines based on the defendant's situation at that time. However, when a petition to revoke is filed, it is based on "the emergence of hardship or inability to pay" at the time the petition is filed. *People v. Rivera*, 2020 IL App (2d) 171002, ¶ 10. Nothing in my interpretation of section 5-9-2 negates the imposition of mandatory fines. Rather, under my interpretation, the purpose of the statute, to alleviate financial hardship when a petitioner demonstrates good cause, is furthered.

¶ 49     Because the statute exempts only those fines imposed under Chapter 15 of the Illinois Vehicle Code, I disagree with the majority's conclusion that revocation of petitioner's fines is not authorized under section 5-9-2. Based on its finding that the revocation statute applied only to discretionary penal fines imposed under section 5-9-1 of the Unified Code of Corrections, the appellate court did not determine that petitioner established good cause for the revocation of his fines. The majority finds the trial court did not abuse its discretion in denying the revocation petition because it lacked discretion to revoke or modify the fines. I agree with the trial court's finding that petitioner did not establish good cause and its denial of the petition to revoke, and I concur with the majority on this issue.