**2025 IL 130344**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

───────────────

(Docket No. 130344)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v.
KRYSTLE HOFFMAN, Appellee.

*Opinion filed June 26, 2025.*

CHIEF JUSTICE THEIS delivered the judgment of the court, with opinion.

Justices Overstreet, Holder White, and Cunningham concurred in the judgment and opinion.

Justice O'Brien dissented, with opinion, joined by Justices Neville and Rochford.

## OPINION

¶ 1     This issue in this appeal is whether section 5-4-1(c-1.5) of the Unified Code of Corrections (Code) (730 ILCS 5/5-4-1(c-1.5) (West 2022)) permits the trial court to deviate from the otherwise mandatory minimum prison term for drug-induced

homicide. The Kendall County circuit court found that the statute did not permit a sentencing deviation for that offense. The appellate court determined, however, that it did. 2023 IL App (2d) 230067, ¶ 40. For the reasons that follow, we hold that section 5-4-1(c-1.5) does not allow a sentencing deviation for drug-induced homicide, as that construction of the statute would lead to absurd results. Therefore, we reverse the judgment of the appellate court, in part.

¶ 2                                    BACKGROUND

¶ 3        Defendant Krystle Hoffman was charged with the drug-induced homicide of Lorna Haseltine. On August 12, 2017, Haseltine texted defendant to inquire whether her boyfriend could obtain heroin for Haseltine. Defendant responded that her roommate, Mark Matthews, would have heroin that afternoon. Haseltine then wired money to defendant via Western Union. Defendant retrieved the money and drove Matthews to Haseltine's home, where Matthews handed Haseltine the heroin. Shortly thereafter, Haseltine went upstairs to take a bath. Sometime later, her nine-year-old son checked on her and began screaming that she would not wake up. An autopsy report attributed her death to heroin laced with other substances, including fentanyl. About one year later, the police interviewed defendant. Although defendant was not herself a drug user, she ultimately acknowledged arranging for Matthews to give Haseltine heroin.

¶ 4        On September 14, 2022, defense counsel informed the trial court that defendant intended to enter an open guilty plea to drug-induced homicide and asked to be sentenced under the recently enacted section 5-4-1(c-1.5) of the Code, although the State did not agree that the statute applied. After the State presented the factual basis, the trial court accepted defendant's guilty plea.

¶ 5        At the sentencing hearing, the State presented the text messages between Haseltine and defendant, a document showing the Western Union transfer, and the video of defendant's interview with police. Haseltine's father testified regarding the events on the day she died, and her sister read a victim impact statement attesting to her family's trauma and emotional suffering, including the deprivation experienced by Haseltine's son.

- 2 -

¶ 6        Several of defendant's friends and family members testified on her behalf. Their collective testimony indicated that defendant was a hard worker, was against drug use, and would often help others. She was naïve, however, rather than a leader. Suzanne Rubin, a psychotherapist, testified that defendant was not a threat to the public and was at a low risk for recidivism as to this offense. In addition, Karen L. Smith's psychosocial evaluation revealed that defendant was a slow learner, as well as a people pleaser, and struggled with codependency. The presentence investigation report showed that defendant had no criminal background but had been sentenced to supervision for driving under the influence of alcohol after being charged in this case. In elocution, defendant acknowledged that what she did was wrong and apologized to Haseltine's family.

¶ 7        The parties disputed whether, under section 5-4-1(c-1.5) of the Code, the trial court could deviate from the mandatory minimum prison sentence required for drug-induced homicide. Section 5-4-1(c-1.5) permits a trial court to deviate from a mandatory prison term when, among other things, "the offense involves the use or possession of drugs." 730 ILCS 5/5-4-1(c-1.5) (West 2022).

¶ 8        The State argued that the statute referred to the "use" or "possession" of drugs but omitted "delivery," which is required to commit drug-induced homicide. Defendant did not use drugs, and although Matthews possessed them, defendant did not. According to the State, the statute was only intended to address "minimum sentencing laws that were imposed in the '80s for drug cases" and drug users who were imprisoned for having an addiction. Sentencing a defendant to probation for killing someone would be absurd.

¶ 9        Defense counsel argued that this case clearly involved the "use" of heroin but acknowledged that the statute did not specify whether it applied to a defendant's "use" or a victim's "use." Additionally, the statute applied to drug-induced homicide because that offense required "delivery" and delivery required "possession." Defense counsel further argued that, because the statute was ambiguous, it should be interpreted in defendant's favor.

¶ 10        The trial court found that, if section 5-4-1(c-1.5) applied, "it may very well be that a term of probation would be appropriate under the very specific facts of this case." Yet the court surmised that "the phrase use or possession of drugs in conjunction with a mandatory minimum sentence as set forth in the statute does not

- 3 -

apply to the offense of drug-induced homicide, a Class X felony." The trial court imposed the minimum six-year prison term.

¶ 11 The appellate court vacated Hoffman's sentence and remanded this matter for a new sentencing hearing. 2023 IL App (2d) 230067. The appellate court held that drug-induced homicide constitutes an offense that "involves the use or possession of drugs" within the unambiguous meaning of section 5-4-1(c-1.5), which permitted the trial court to deviate from the mandatory minimum prison term. *Id.* ¶¶ 31-33, 38, 40. Because drug-induced homicide requires a defendant to commit the offense of delivery and delivery requires possession, the court opined that possession is closely involved with delivery and drug-induced homicide. *Id.* ¶¶ 32-33. Moreover, under the statute, a defendant convicted of drug-induced homicide would nonetheless be subject to a mandatory prison term if she posed a risk to public safety or if the interest of justice did not require a sentencing deviation. *Id.* ¶ 39.

¶ 12 Justice Jorgensen specially concurred. She agreed that the statute's plain language supported the majority's holding but expressed concern that the legislative history showed that the legislature did not intend for the statute to apply broadly to all delivery offenses. *Id.* ¶¶ 61-63 (Jorgensen, J., specially concurring). She urged the legislature to clarify its intent if this was the case. *Id.* ¶ 63.

¶ 13 We allowed the State's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Dec. 7, 2023).

¶ 14 ANALYSIS

¶ 15 The issue before us is the proper construction of section 5-4-1(c-1.5) and whether it authorizes a trial court to deviate from the mandatory minimum prison sentence for drug-induced homicide.

¶ 16 Our primary objective in construing a statute is to ascertain and effectuate the legislature's intent. *People v. Burge*, 2021 IL 125642, ¶ 20. The best indication of that intent is the statute's plain language, given its ordinary meaning. *People v. Wells*, 2023 IL 127169, ¶ 31. Where a statute's language is clear and unambiguous, we must effectuate the statute's meaning without consulting other aids of statutory

construction. *People v. Davidson*, 2023 IL 127538, ¶ 14. Where a statute is ambiguous, however, we must consult extrinsic tools. *People v. Boyce*, 2015 IL 117108, ¶ 22.

¶ 17       Section 5-4-1(c-1.5) of the Code states:

"Notwithstanding any other provision of law to the contrary, in imposing a sentence for an offense that requires a mandatory minimum sentence of imprisonment, the court may instead sentence the offender to probation, conditional discharge, or a lesser term of imprisonment it deems appropriate if: (1) *the offense involves the use or possession of drugs, retail theft, or driving on a revoked license due to unpaid financial obligations*; (2) the court finds that the defendant does not pose a risk to public safety; and (3) the interest of justice requires imposing a term of probation, conditional discharge, or a lesser term of imprisonment. The court must state on the record its reasons for imposing probation, conditional discharge, or a lesser term of imprisonment." (Emphasis added.) 730 ILCS 5/5-4-1(c-1.5) (West 2022).

¶ 18       Initially, we observe that this statute is not a model of clarity in legislative drafting. The legislature seemingly intended to allow the trial court to depart from mandatory minimum prison terms for certain offenses that it deemed to be less serious. Beyond that, little is clear. Nonetheless, our construction must be guided by the language of the statute and well-settled principles of statutory construction.

¶ 19       Here, the parties dispute what it means for an offense to constitute one that "involves the *** possession of drugs," focusing on the term "involves." *Id.*

¶ 20       The State argues that the legislature modified the "possession of drugs" with the word "involves" because Illinois recognizes not just one offense for the mere possession of drugs but several possession offenses spread across several acts. See 720 ILCS 570/402 (West 2022); 720 ILCS 646/60 (West 2022); 720 ILCS 550/4 (West 2022). The State suggests that the legislature unambiguously referred to an offense that "involves" drug possession as an alternative to listing every statutory possession offense. Thus, the legislature did not intend to allow sentencing deviations for offenses that involve additional conduct beyond mere possession.

¶ 21 Defendant contends that, by modifying "possession of drugs" with the word "involves," the legislature unambiguously intended to include offenses beyond mere possession. She argues that, because one cannot deliver what one does not possess, section 5-4-1(c-1.5) encompasses the delivery of drugs. See, *e.g.*, 720 ILCS 570/102(h) (West 2022) (stating that under the Illinois Controlled Substances Act, " 'delivery' means the actual, constructive or attempted transfer of possession of a controlled substance, with or without consideration"). Defendant further asserts that, because drug-induced homicide requires the delivery of drugs (720 ILCS 5/9-3.3(a) (West 2022)), section 5-4-1(c-1.5) also encompasses drug-induced homicide.

¶ 22 A statute is ambiguous if reasonably well-informed persons could understand it in multiple ways. *People v. Lighthart*, 2023 IL 128398, ¶ 39. In addition, ambiguity is a question of statutory context, not definitional possibilities. *Slepicka v. Illinois Department of Public Health*, 2014 IL 116927, ¶ 14. If a statutory term has multiple definitions that would each make some sense in the statute's context, the statute is ambiguous. *Id.* We review matters of statutory construction *de novo*. *People v. Fair*, 2024 IL 128373, ¶ 61.

¶ 23 We find section 5-4-1(c-1.5) to be ambiguous. A reasonably well-informed person could understand this statute to allow the trial court to deviate from a mandatory sentence for any offense that requires mere drug possession, to the exclusion of other conduct, regardless of where the offense appears in the Criminal Code. A reasonably well-informed person could also, however, understand the statute to permit the trial court to deviate from a mandatory minimum prison term for any offense that includes the possession of drugs in addition to other conduct. In short, reasonably well-informed persons could understand "involves" in multiple ways.

¶ 24 Dictionary definitions provide no clarity here. The word "involve" is susceptible to several meanings. The term "involve" means "to have within or as part of itself" but also "to relate *closely*: connect." (Emphasis added.) Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/involves (last visited Apr. 29, 2025) [https://perma.cc/7JN5-DBH3].

¶ 25 As defendant argues, delivery and drug-induced homicide each have drug possession "within or as part of itself." On the other hand, the State's assertion that drug-induced homicide is a far cry from mere drug possession—*i.e.*, drug-induced

homicide is not "closely" related to mere drug possession—is also well taken. The respective definitions ascribed to "involves" by each party make some sense within the context of this statute. This supports our determination that the statute is ambiguous. See *People v. Beachem*, 229 Ill. 2d 237, 246 (2008) (finding the statute to be ambiguous because "custody" has several definitions and the statute's context did not indicate the appropriate definition to apply).

¶ 26      Having determined that the statute is ambiguous, we must resort to extrinsic tools of statutory interpretation. *Boyce*, 2015 IL 117108, ¶ 22. Where a statute is ambiguous, courts may examine legislative history and debates to ascertain the legislature's intent. *People v. Reyes*, 2023 IL 128461, ¶ 32.

¶ 27      Defendant and the State each argue that the legislative history behind section 5-4-1(c-1.5) supports their respective positions. We conclude that it supports neither party.

¶ 28      The provision in question was introduced as part of House Bill 1587 on January 30, 2019, and was amended four times. 101st Ill. Gen. Assem., House Bill 1587, 2019 Sess. The first two amendments broadened the offenses that would be excluded from the deviations permitted by the statute. *Id.* (as amended March 14 and March 21, 2019). The third, however, eliminated the list of exclusions and instead enumerated the offenses that would be eligible for a sentencing deviation, including an offense that "involves the possession of drugs." *Id.* (amended April 4, 2019). The fourth and final amendment narrowed eligible offenses for driving on a revoked license to those in which the license was revoked due to unpaid financial obligations. *Id.* (amended April 5, 2019). That amendment also added eligibility for offenses involving the "use" of drugs. *Id.*

¶ 29      Defendant states that it is significant that the legislature added drug "use" to the list of eligible offenses. She has not, however, explained the import of that significance. We also observe that, because a person must "possess" a drug to "use" it, the addition of "use" undermines defendant's argument that section 5-4-1(c-1.5) encompasses delivery offenses solely because delivery requires possession. Such reasoning would seemingly render the term "use" superfluous because use, like delivery, necessarily entails possession. See *Fair*, 2024 IL 128373, ¶ 61 (recognizing that a statute must be construed as a whole so that, if possible, no term is rendered superfluous).

¶ 30        Defendant further argues that legislators' remarks during debates show that the legislature intended to return offenders to society (101st Ill. Gen. Assem., House Proceedings, Apr. 11, 2019, at 179-80 (statements of Representative Connor)) and undo the general harm done by mandatory minimums (*id.* at 180 (statements of Representative Skillicorn)). Examining the debates more closely, those comments shed no light on which offenders should be returned to society or which mandatory minimums were considered to have been unduly harmful.

¶ 31        During House debates on House Bill 1587, Representative Sonya Harper, one of the bill's sponsors, stated that it allowed "judges to sentence an offender to a sentence less than the statutory minimum when it makes sense." *Id.* at 175 (statements of Representative Harper). In opposition, Representative Terri Bryant remarked that the bill permitted deviations for "a whole plethora of charges," including "drug-induced homicides." *Id.* at 175-76 (statements of Representative Bryant). Representative Mark Batinick then asked whether it was correct that the bill would make mandatory minimums optional. *Id.* at 176 (statements of Representative Batinick). Representative Harper responded, "No, I believe there's a misunderstanding about the [b]ill. *** [T]his [b]ill only refers to offenses only involving drug use or possession, retail theft, or driving on a revoked license for unpaid financial obligation." *Id.* (statements of Representative Harper).

¶ 32        We reject the State's assertion that Representative Harper's reference to a misunderstanding was clearly directed at Representative Bryant's belief that the statute would apply to drug-induced homicide. Rather, that reference immediately followed Representative Batinick's question and may have been limited to the suggestion that the trial court could deviate from a mandatory prison term for any offense. We further note that Representative Harper merely recited the provision's language without clarifying its scope.

¶ 33        During Senate proceedings, Senator Steve McClure questioned why the category of an offense that "involves the use or possession of drugs" was "so ambiguous" and "so broad" compared to the "very specific" offenses of retail theft and driving on a revoked license due to unpaid financial obligations. 101st Ill. Gen. Assem., Senate Proceedings, May 24, 2019, at 16-17 (statements of Senator McClure). He observed that even Class X aggravated criminal sexual assault based on delivering a controlled substance to the victim would be eligible for a deviation

and remarked that "judges, for whatever reason, *** can make very poor decisions on the wrong day." *Id.* at 17-18. Senator McClure concluded that this was "bad legislation." *Id.* at 19.

¶ 34 Defendant argues that, despite these comments, the statute was enacted without altering its language, showing that the legislature intended to adopt the broad meaning discussed by Senator McClure. Defendant ignores, however, that following Senator McClure's comments, House Bill 1587 failed to pass in the Senate. 101st Ill. Gen. Assem., House Bill 1587, 2019 Sess. (failed to pass in the Senate, was placed on postponed consideration, and ultimately adjourned *sine die*); 101st Ill. Gen. Assem., Senate Proceedings, May 24, 2019, at 20-21. Instead, the provision was subsequently included verbatim in House Bill 3653 and passed with no acknowledgement of Senator McClure's prior remarks. 101st Ill. Gen. Assem., House Bill 3653, 2019 Sess. Thus, the passage of House Bill 3653 does not signify an endorsement of Senator McClure's prior interpretation of the statute during debates on House Bill 1587.

¶ 35 Representative Justin Slaughter, House Bill 3653's chief sponsor, stated that the statute provided "more judicial discretion for lower level, non-violent offenses." 101st Ill. Gen. Assem., House Proceedings, Jan. 13, 2021, at 7 (statements of Representative Slaughter). Yet, we note that even a simple possession offense may constitute a Class X felony. See, *e.g.*, 720 ILCS 646/60(4) (West 2022) (stating that possession of 100 grams or more of methamphetamine constitutes a Class X felony). Accordingly, we also reject the State's suggestion that Representative Slaughter's view of House Bill 3653 demonstrates the legislature's intent.

¶ 36 In short, the legislative history here does not clarify what the collective legislative body intended when section 5-4-1(c-1.5) was enacted. Instead, it reflects individual legislators talking past one another. *People v. R.L.*, 158 Ill. 2d 432, 442 (1994) (recognizing that courts generally give individual legislators' comments little weight, as the collective body's intent guides our construction).

¶ 37 Among the many guides for interpreting an ambiguous statute is our consideration of the consequences of any given interpretation. *Solon v. Midwest Medical Records, Ass'n*, 236 Ill. 2d 433, 441 (2010). We may reject an otherwise reasonable interpretation of a statute if that interpretation would lead to absurd results. See *Wells*, 2023 IL 127169, ¶ 31 (stating that this court must presume the

legislature did not intend absurdity). We find that defendant's interpretation of section 5-4-1(c-1.5) would indeed lead to absurd results.

¶ 38       Defendant's expansive reading of the statute would permit a trial court to deviate from a mandatory minimum prison term for any offense that encompasses drug possession, which, as we have noted, implicates delivery. In turn, a sentencing court could deviate from a mandatory prison term with respect to any offense that includes delivery. Many offenses requiring delivery constitute Class X offenses that are subject to mandatory minimum prison terms (730 ILCS 5/5-4.5-25(d) (West 2022)) and would therefore be eligible for sentencing deviations under defendant's interpretation of section 5-4-1(c-1.5). See, *e.g.*, 720 ILCS 5/31A-1.2(c), (e) (West 2022) (Class X unauthorized delivery of contraband, including controlled substances, to an inmate); 720 ILCS 570/407(b)(1) (West 2022) (Class X delivery of a controlled substance within 500 feet of a school when minors are present); 720 ILCS 5/33G-3(e)(4), 33G-4, 33G-5 (West 2022) (Class X racketeering predicated on methamphetamine delivery). For several reasons, we find that casting such a broad net would lead to absurd results.

¶ 39       As the offense of drug-induced homicide shows, offenses that require delivery may lead to another's death. See 720 ILCS 5/9-3.3(a) (West 2022). Delivery of a controlled substance, or even possession, may be a component of felony murder (*id.* § 9-1(a)(3)), which is also subject to a mandatory minimum prison term (730 ILCS 5/5-4.5-20 (West 2022)). See 720 ILCS 5/33A-2(a) (West 2022); *People v. Trowers*, 215 Ill. App. 3d 862, 865-66 (1991) (recognizing that armed violence may be predicated on possession of a controlled substance); *People v. Greer*, 336 Ill. App. 3d 965, 971 (2003) (recognizing that armed violence based on delivery of a controlled substance may constitute a forcible felony, serving as a predicate for felony murder). We find that it would be absurd for the legislature to extend the same sentencing grace to a defendant who merely possesses drugs and a defendant whose actions lead to someone's death.

¶ 40       As the State observes, certain Class X offenses may also be committed by deliberately delivering drugs to a victim as a tool to further violate the victim's person. Class X predatory criminal sexual assault of a child, for example, may be committed by "deliver[ing] *** any controlled substance to the victim." 720 ILCS 5/11-1.40(a)(2)(D), (b) (West 2022). Similarly, a person may commit Class X

aggravated criminal sexual assault by "deliver[ing] *** any controlled substance to the victim." *Id.* § 11-1.30(a)(7), (d). Under defendant's interpretation of section 5-4-1(c-1.5), a trial court could find such offenses where the defendant weaponized the delivery of drugs eligible for sentencing deviations. We find that this too renders defendant's construction of the statute inherently absurd. Simply put, there is no reason why a defendant's use of drugs against another would reduce the defendant's culpability.

¶ 41    Moreover, certain offenses may be committed both with and without the delivery of drugs. For example, the foregoing offense of predatory criminal sexual assault of a child may be committed by delivering drugs to the victim but may also be committed by being armed with a firearm. *Id.* § 11-1.40(a)(2)(A), (d). Aggravated criminal sexual assault may be committed through the delivery of drugs but may also be committed by displaying a dangerous weapon. *Id.* § 11-1.30(a)(1), (7), (d). Similarly, a person may confine a child for the purpose of committing the Class X offense of promoting juvenile prostitution "by administering to the child *** any *** drug" or by administering alcohol. *Id.* § 11-14.4(a)(4), (d). Defendant has failed to identify any conceivable reason why the legislature would empower the trial court to return to society individuals who commit offenses by weaponizing drugs but deny the trial court's authority to do the same for defendants who commit the same offenses through other means.

¶ 42    Defendant argues that section 5-4-1(c-1.5)'s other requirements—that the defendant is not a threat to public safety and that the interest of justice require a sentencing deviation—ameliorate these absurdities. Those requirements, however, do not explain why the legislature would make sentencing relief available for the aforementioned delivery offenses in the first instance.

¶ 43    In light of the presumption that the legislature did not intend absurd results, section 5-4-1(c-1.5)'s reference to an offense that "involves the *** possession of drugs" cannot mean any offense that includes or necessarily entails possession and, in turn, delivery.

¶ 44    In contrast, the State's interpretation of what it means for an offense to "involve[ ] the *** possession of drugs" does not lead to absurd results. The State contends that such language refers to any offense criminalizing the mere possession of drugs, regardless of what enactment the offense appears in. This interpretation

furthers the legislature's purpose of alleviating the effects of mandatory minimum prison terms, as some offenders will be entitled to a sentencing deviation.

¶ 45    We hold that section 5-4-1(c-1.5)'s reference to an offense that involves drug possession authorizes a trial court to deviate from a mandatory minimum prison term for the mere possession of drugs, not for any and all offenses that implicate drug possession, provided that the statute's other requirements are satisfied.

¶ 46    In reaching this determination, we reject defendant's assertion that the rule of lenity requires us to construe the statute in her favor. Under that rule, a court adopts a more lenient interpretation of a criminal statute where, after applying traditional tools of statutory construction, an ambiguous statute remains. *People v. Gaytan*, 2015 IL 116223, ¶ 39.

¶ 47    Here, we have resolved the specific ambiguity before us by using traditional tools of statutory construction to determine the legislature's intent. Consequently, we are not presented with a grievous ambiguity requiring us to apply the rule of lenity. See *People v. Gutman*, 2011 IL 110338, ¶ 44 (distinguishing between an ambiguity and a "grievous ambiguity").

¶ 48    Finally, although well-settled rules of statutory construction have enabled us to resolve the specific ambiguity before us, our review of the statute and the parties' arguments has revealed several hurdles to understanding and applying section 5-4-1(c-1.5). We briefly touch on them here.

¶ 49    The statute refers to an offense that involves the "use" of drugs, but neither the Controlled Substances Act (720 ILCS 570/100 *et. seq.* (West 2022)), the Methamphetamine Control and Community Protection Act (720 ILCS 646/1 *et. seq.* (West 2022)), nor the Cannabis Control Act (720 ILCS 550/1 *et seq.* (West 2022)) criminalizes drug "use." Instead, they criminalize conduct such as possession, delivery, manufacturing, and trafficking. See 720 ILCS 570/401, 401.1, 402 (West 2022); 720 ILCS 646/15, 55, 56, 60 (West 2022); 720 ILCS 550/4, 5.1, 5.2, 6 (West 2022). Additionally, section 5-4-1(c-1.5) does not define "drugs." Although the statute encompasses offenses involving "retail theft or driving on a revoked license due to unpaid financial obligations," the parties dispute when, if ever, those offenses are subject to a mandatory minimum prison term, as is required for the statute to apply. Moreover, licenses are generally not "revoked" due to

unpaid financial obligations; they are "suspended." See 625 ILCS 5/7-303(a), (b), 7-702(c) (West 2022); see also *id.* § 7-205(a).

¶ 50     For the benefit of defendants, the public, and the courts, we urge the legislature to revisit this statute to ensure that the language employed clearly reflects the legislature's intent.

¶ 51                                    CONCLUSION

¶ 52     For the foregoing reasons, we hold that section 5-4-1(c-1.5) permits the trial court to deviate from a mandatory minimum prison term where an offense criminalizes the mere possession of drugs, regardless of what enactment the offense appears in. The statute does not authorize a deviation for offenses that include possession in addition to other conduct, including the conduct involved in drug-induced homicide. Recognizing this, the trial court correctly sentenced defendant to the mandatory minimum six-year prison term for that offense. Accordingly, we reverse the appellate court's judgment to the extent that the court vacated defendant's prison sentence and affirm the appellate court's judgment in all other respects. The appellate court also remanded with directions to set the manner and method of paying restitution, and we do not disturb this portion of the appellate court's judgment.

¶ 53     Appellate court judgment affirmed in part and reversed in part.

¶ 54     Circuit court judgment affirmed and remanded with directions.

¶ 55     JUSTICE O'BRIEN, dissenting:

¶ 56     I disagree with the majority's conclusion that the sentence reduction statute (730 ILCS 5/5-4-1(c-1.5) (West 2022)) is ambiguous and does not apply to the offense of drug-induced homicide. See *supra* ¶¶ 1, 23. I also disagree with the majority's speculative belief that the application of the sentence reduction statute to the instant case will lead to absurd results in the future. *Supra* ¶ 38. Because I would find that the sentence reduction statute is unambiguous and applicable to the offense of drug-induced homicide, I dissent.

¶ 57        The question to be answered in this appeal is whether the sentence reduction statute (730 ILCS 5/5-4-1(c-1.5) (West 2022)) applies to the offense of drug-induced homicide. "This is a question of statutory interpretation, and as such the principles guiding our analysis are well established." *People v. Swift*, 202 Ill. 2d 378, 385 (2002). This court's primary objective when interpreting a statute is to give effect to the legislature's intent. *Id.* Importantly, it is the statutory text that best reflects the legislature's intent. *People v. Grant*, 2022 IL 126824, ¶ 24. When the statutory text is clear and unambiguous, a court may not depart from the plain language and meaning of the statute by reading into it exceptions, limitations, or conditions that the legislature did not express. *Id.* ¶ 25 (citing *King v. First Capital Financial Services Corp.*, 215 Ill. 2d 1, 26 (2005), and *In re Marriage of Beyer*, 324 Ill. App. 3d 305, 309-10 (2001)). If we can determine the legislative intent from the plain language of the statute, we must give that intent effect without resorting to other interpretive aids or consideration of the legislative history of the statute. *Roberts v. Alexandria Transportation, Inc.*, 2021 IL 126249, ¶ 44; *People v. De Filippo*, 235 Ill. 2d 377, 384 (2009); *People v. Roberts*, 214 Ill. 2d 106, 116 (2005); *Eden Retirement Center, Inc. v. Department of Revenue*, 213 Ill. 2d 273, 292 (2004) (citing *Envirite Corp. v. Illinois Environmental Protection Agency*, 158 Ill. 2d 210, 216-17 (1994)); *County of Du Page v. Graham, Anderson, Probst & White, Inc.*, 109 Ill. 2d 143, 151 (1985); *Illinois Power Co. v. Mahin*, 72 Ill. 2d 189, 194 (1978) (citing *Western National Bank of Cicero v. Village of Kildeer*, 19 Ill. 2d 342, 350 (1960)).

¶ 58        The sentence reduction statute states:

"(c-1.5) Notwithstanding any other provision of law to the contrary, in imposing a sentence for an offense that requires a mandatory minimum sentence of imprisonment, the court may instead sentence the offender to probation, conditional discharge, or a lesser term of imprisonment it deems appropriate if: (1) the offense involves the use or possession of drugs, retail theft, or driving on a revoked license due to unpaid financial obligations; (2) the court finds that the defendant does not pose a risk to public safety; and (3) the interest of justice requires imposing a term of probation, conditional discharge, or a lesser term of imprisonment. The court must state on the record its reasons for imposing probation, conditional discharge, or a lesser term of imprisonment." 730 ILCS 5/5-4-1(c-1.5) (West 2022).

¶ 59    The statute provides the trial court discretion to impose a sentence below the mandatory minimum term in three instances: if "the offense involves the use or possession of drugs, retail theft, or driving on a revoked license due to unpaid financial obligations." *Id.* The majority finds ambiguity in both the individual word—"involves"—and the relevant nine words—"the offense involves the use or possession of drugs." The majority believes a reasonable person could read the sentence reduction statute as applicable only to "mere drug possession" offenses but also as applying to offenses that include drug possession "in addition to other conduct." *Supra* ¶ 23. Likewise, the majority believes that "well-informed persons could understand 'involves' in multiple ways." *Supra* ¶ 23. I emphasize that the common understanding and usage of the term "involves" in our everyday vocabulary is not an abstract or amorphous concept. Using this unambiguous term, the legislature's intent is crystal clear—if the offense involves the use or possession of drugs and the other requirements of the statute are met, the defendant is eligible for a lesser sentence. See 730 ILCS 5/5-4-1(c-1.5) (West 2022). This language cannot be reasonably read to apply only to a narrow and specific subset of drug possession offenses. The majority's opposite conclusion that a reasonable person could interpret this language as applicable only to "mere drug possession" offenses violates the cardinal rule of statutory construction that a court "may not depart from the plain language and meaning of a statute by reading into the statute exceptions, limitations, or conditions that the legislature did not express." *People v. Legoo*, 2020 IL 124965, ¶ 14; see *People v. Lighthart*, 2023 IL 128398, ¶ 39 (citing *Brunton v. Kruger*, 2015 IL 117663, ¶ 24, and *Gaffney v. Board of Trustees of the Orland Fire Protection District*, 2012 IL 110012, ¶ 56); *People v. Hardman*, 2017 IL 121453, ¶ 31 (citing *Roberts*, 214 Ill. 2d at 116); *People v. Giraud*, 2012 IL 113116, ¶ 6 (citing *People v. Perry*, 224 Ill. 2d 312, 323-24 (2007)); *People v. Dominguez*, 2012 IL 111336, ¶ 16; *People v. Amigon*, 239 Ill. 2d 71, 85 (2010); *People v. Rissley*, 206 Ill. 2d 403, 414 (2003).

¶ 60    Because the statute does not define the term "involves," my analysis, like the majority's, begins with looking to the word's plain meaning as set forth in the dictionary. *People v. Chapman*, 2012 IL 111896, ¶ 24 ("When a statute contains a term that is not specifically defined, it is entirely appropriate to look to the dictionary to ascertain the plain and ordinary meaning of the term."). "Involve" is defined as "to have within or as part of itself: include" or "to relate closely: connect" (Merriam-Webster Online Dictionary, https://www.merriam-webster.com/

dictionary/involve (last visited June 6, 2025) [https://perma.cc/DS3Z-NLNB]) and "to contain as a part; include" and "to connect closely and often incriminatingly; implicate" (American Heritage College Dictionary 716 (3d ed. 1997). Unlike the majority, I find no conflict in the dictionary definitions of "involves." The dictionary definitions assign similar meanings to "involves," such as "connect," "contain," and "include." I hold that the meaning and definition of the word "involves" is unambiguous.

¶ 61 While the majority distorts the plain meaning of the word "involves," it also disregards and removes the word "use" from the statute. Specifically, the majority focuses entirely on drug possession as an eligible offense, not drug "use or possession" as the statute dictates. *Supra* ¶ 45. By focusing only on drug possession and omitting drug use from its interpretation of the statutory text, the majority violates the well-established principle that all words in a statute are to be considered when construing it. *People v. Casas*, 2017 IL 120797, ¶ 18 ("Each word, clause, and sentence of a statute must be given a reasonable meaning, if possible, and should not be rendered superfluous."). I would find the statute read in its entirety, giving meaning to each and every word, is unambiguous.

¶ 62 The statute does not limit its applicability to specific drug use or drug possession offenses. As the appellate court concluded, if the legislature had intended a narrow application of section 5-4-1(c-1.5) (730 ILCS 5/5-4-1(c-1.5) (West 2022)) incorporating only drug use and possession offenses, it would not have employed "involves." 2023 IL App (2d) 230067, ¶ 36. For example, instead of using the word "involves," the legislature could have enacted the sentence reduction statute to unambiguously apply to a narrow and specific subset of drug offenses if it so intended. Significantly, that is exactly what the legislature did when addressing the sentence reduction statute's applicability to offenses involving "driving on a revoked license *due to unpaid financial obligations*." (Emphasis added.) 730 ILCS 5/5-4-1(c-1.5) (West 2022). The legislature was consciously aware of its ability to include such limiting language. It therefore logically follows that the legislature could have restricted the sentence reduction statute's application to offenses involving use or possession of drugs as defined in the Illinois Controlled Substances Act (720 ILCS 570/100 *et seq.* (West 2022)), the Methamphetamine Control and Community Protection Act (720 ILCS 646/1 *et seq.* (West 2022)), the Cannabis Control Act (720 ILCS 550/1 *et seq.* (West 2022)), and the Use of

Intoxicating Compounds Act (720 ILCS 690/0.01 *et seq.* (West 2022)). Or the legislature could have restricted the statute's application based on the class of the offense or the nonviolent nature of the offense. It, however, did not include any of the above restrictions or limiting language. Instead, the legislature consciously chose for the statute to plainly apply "if: (1) the offense involved the use or possession of drugs." 730 ILCS 5/5-4-1(c-1.5) (West 2022).

¶ 63        The legislature's placement of the words "offense involves" before the words "use or possession of drugs," without any additional limiting language or citations of specific criminal statutes, illustrates its unambiguous intent for the statute to include all offenses that "involve[d] the use or possession of drugs," as opposed to merely applying to a possession or use of drug offense under a particular criminal statute. See *id.* Put simply, the sole condition precedent to the satisfaction of this portion of the sentence reduction statute is that the "offense involves the use or possession of drugs." *Id.* Unlike the majority, I would hold that the legislature's selection of this unambiguous language illustrates its clear intent to widen the statutory scope of the sentence reduction statute to allow trial courts to exercise discretion to impose a lower sentence in circumstances where the offense "involves the use or possession of drugs" and the respective "public safety" and "interest of justice" requirements of the statute are also met. *Id.*

¶ 64        The remaining question therefore with respect to the instant case is whether the offense of drug-induced homicide constitutes an offense that "involves the use or possession of drugs." *Id.* The offense has two elements: (1) the defendant "unlawfully deliver[ed] a controlled substance to another," and (2) a "person's death is caused by the injection, inhalation, absorption, or ingestion of any amount of that controlled substance." 720 ILCS 5/9-3.3(a) (West 2018). The indictment here alleged defendant "unlawfully delivered" heroin to Haseltine and Haseltine's subsequent "injection, inhalation, absorption, or ingestion" of the heroin resulted in Haseltine's death. The appellate court correctly explained that defendant could not have delivered the heroin without possessing it. 2023 IL App (2d) 230067, ¶¶ 32-33. " 'Deliver' or 'delivery' means the actual, constructive or attempted transfer of *possession of a controlled substance*, with or without consideration, whether or not there is an agency relationship." (Emphasis added.) 720 ILCS 570/102(h) (West 2018). The State acknowledged the applicability of this definition during the proceedings in the trial court and conceded that "one has to possess drugs before

one can deliver them." Even the majority itself tepidly acknowledges the legal truth that one cannot knowingly deliver a drug without first knowingly possessing it. *Supra* ¶¶ 25, 38. It therefore logically follows that the first element the State was required to prove to convict defendant of drug-induced homicide—unlawful delivery of heroin to Haseltine—unambiguously "involves" the "possession" of a drug (heroin). Likewise, the second element the State was required to prove to convict defendant of drug-induced homicide—Haseltine's "injection, inhalation, absorption, or ingestion" of the heroin resulting in her death—unambiguously "involves" the "use" of a drug (heroin). Accordingly, I would hold that the offense of drug-induced homicide constitutes an offense that "involves the use or possession of drugs."

¶ 65    For these reasons, I would affirm the appellate court's judgment vacating defendant's six-year sentence and remanding this cause for the trial court to consider whether to impose a sentence under section 5-4-1(c-1.5) of the sentence reduction statute. 730 ILCS 5/5-4-1(c-1.5 (West 2022).

¶ 66    While the following portion of my dissent is not necessary to my dispositional analysis above, I would be remiss if I did not offer comment on the further flawed reasoning of the majority after it found the sentence reduction statute to be ambiguous. Upon finding the statute ambiguous, the majority proceeds to find ambiguity throughout the statute's legislative history. Because I have found the statute to be unambiguous, I offer no comment on its legislative history. *People v. Reyes*, 2023 IL 128461, ¶ 30 (courts do not consider legislative history when a statute is unambiguous). However, to summarize, the majority finds the following ambiguous: (1) the individual word "involves" (*supra* ¶ 23), (2) the relevant nine words—"the offense involves the use or possession of drugs" (*supra* ¶ 23), and (3) the statute's legislative history (*supra* ¶ 30). At this point, there is no remaining text or history for the majority to examine. Ignoring this reality, the majority curiously proceeds to reject defendant's argument that "the rule of lenity requires us to construe the statute in her favor." *Supra* ¶ 46. The sole stated basis for the majority's rejection: "[W]e are not presented with a grievous ambiguity requiring us to apply the rule of lenity." *Supra* ¶ 47. Such a finding prompts the question: If the statute in question is deemed to be ambiguous, along with the statute's entire legislative history, what remains to be deemed ambiguous before the existing ambiguity qualifies to be one of a grievous nature? In pondering this question, I

believe the majority compounds its error by failing to apply the rule of lenity, considering its multiple findings of ambiguity. There is simply nothing of substance remaining for the majority to review. Put more plainly, all the ambiguity boxes have been checked. This court, citing a case from 1820, recently stated: "In construing a criminal statute, courts must resist the impulse to speculate regarding legislative intent, for 'probability is not a guide which a court, in construing a penal statute, can safely take.' " *People v. Hartfield*, 2022 IL 126729, ¶ 69 (quoting *United States v. Wiltberger*, 18 U.S. (5 Wheat.) 76, 105 (1820)); see *United States v. Davis*, 588 U.S. 445, 464 (2019); *People v. Gaytan*, 2015 IL 116223, ¶ 39; *Fitzsimmons v. Norgle*, 104 Ill. 2d 369, 374 (1984). The majority violates this precedent by not applying it to the instant case.

¶ 67    Instead of adhering to our cautionary precedent and applying the rule of lenity in defendant's favor, however, the majority succumbs to "the impulse to speculate regarding legislative intent." *Hartfield*, 2022 IL 126729, ¶ 69. In doing so, the majority compares what it believes to be two reasonable interpretations of the sentence reduction statute and proceeds to pick the one it concludes will lead to the least absurd result. To emphasize, the majority's entire dispositional outcome in the instant case rests upon speculating whether the application of the sentence reduction statute to the instant case will lead to absurd results in future hypothetical scenarios. While the majority claims otherwise, its analysis is not grounded in "traditional tools of statutory construction." *Supra* ¶¶ 46-47. Specifically, the majority presents a list of offenses it contends exemplify the absurd results of expansively interpreting the sentence reduction statute to include delivery offenses that therefore involve drug possession. These offenses include unauthorized delivery of contraband, including controlled substances, to an inmate (720 ILCS 5/31A-1.2(c), (e) (West 2022)); delivery of a controlled substance within 500 feet of a school when minors are present (720 ILCS 570/407(b)(1) (West 2022)); racketeering predicated on methamphetamine delivery (720 ILCS 5/33G-3(e)(4), 33G-4, 33G-5, (West 2022)); felony murder predicated on delivery or possession of a controlled substance (*id.* § 9-1(a)(3); 730 ILCS 5/5-4.5-20 (West 2022)); armed violence predicated on possession of a controlled substance (720 ILCS 5/33A-2(a) (West 2022)); predatory criminal sexual assault committed by delivering a controlled substance to the victim (*id.* § 11-1.40(a)(2)(D), (b)); and aggravated criminal sexual assault by delivering any controlled substance to a victim (*id.* § 11-1.30(a)(7), (d)). *Supra* ¶¶ 38-39, 41.

¶ 68 Importantly, none of the above scenarios are before us today. See *People v. Bass*, 2021 IL 125434, ¶ 29 (reviewing courts do not decide "moot or abstract questions, will not review cases merely to establish precedent, and will not render advisory opinions"). Our analysis must be limited to the case and facts presently before us. See *id.* More specifically, the question is not whether a reviewing court can contrive a hypothetical absurd result that *may* arise in the future if the sentence reduction statute is applied in the instant case. The appropriate question is instead whether the "proffered reading of a statute leads to absurd results." *Dawkins v. Fitness International, LLC*, 2022 IL 127561, ¶ 27; see *Evans v. Cook County State's Attorney*, 2021 IL 125513, ¶ 27; *People v. Johnson*, 2017 IL 120310, ¶ 15; *People v. Hanna*, 207 Ill. 2d 486, 498 (2003). Importantly, the appropriate question is one of present tense form, not future tense form. Reviewing the present circumstances, I note that the trial court stated it would be inclined to sentence defendant to a term of probation had it believed such an option was available. The court stated: "Certainly if the court had broad discretion in imposing a sentence, it may very well be that a term of probation would be appropriate under the very specific facts of this case." The majority's creation of hypothetical scenarios it arbitrarily finds to be absurd is not a "traditional tool[ ] of statutory construction." *Supra* ¶¶ 46-47. " '[T]he absurd results doctrine should be used sparingly because it entails the risk that the judiciary will replace legislative policy on the basis of speculation that the legislature could not have meant what it unmistakably said.' " *In re D.F.*, 208 Ill. 2d 223, 250 (2003) (Freeman, J., specially concurring, joined by McMorrow, C.J.) (quoting 2A Norman J. Singer, Sutherland on Statutory Construction § 46:07, at 199 (6th ed. 2000)).

¶ 69 Lastly, the majority's hypothetical and speculative discussion dismisses entirely the fact that the sentence reduction statute is discretionary in nature and contains two additional requirements that the trial court must determine exist prior to being afforded said discretion. Specifically, the trial court must find that the defendant poses no risk to public safety and that the interests of justice support a reduction in the statutory minimum sentence. 730 ILCS 5/5-4-1(c-1.5) (West 2022). Here, in sentencing defendant, the trial court found that defendant did not pose a risk to the public and that, although the State, defendant, and Haseltine's family all wanted to satisfy the interests of justice, there was "no agreement as to what form that justice should take." Unlike the majority, I will not render judgment on cases or specific issues that may appear before this court in the future; however,

I will note that the legislature, via these two additional requirements, makes clear that merely being convicted of an offense involving "use or possession of drugs" will not automatically entitle a defendant to a reduced sentence, as the majority seems to believe. The sentence reduction statute unambiguously requires that all three factors are satisfied first and only then "*may*" the trial court impose a reduced sentence. (Emphasis added.) *Id.* Indeed, the fact that the statute "*may*" apply to a defendant who committed one of the hypothetical offenses proposed by the majority does not mean that the defendant will ultimately be deemed eligible for a reduced sentence when the other two statutory factors are considered. And even if all three statutory factors are met, that does not mean the trial court will ultimately exercise its discretion and sentence the defendant to a reduced sentence. The majority chooses to ignore this reality and instead rests its entire dispositional conclusion on hypothetical scenarios and imaginary defendants that are not before us today.

¶ 70    To summarize, the sentence reduction statute is unambiguous. The offense of drug-induced homicide involves both the use and possession of drugs. Accordingly, the appellate court's judgment vacating defendant's six-year sentence and remanding this cause for the trial court to consider whether to impose a sentence under section 5-4-1(c-1.5) of the sentence reduction statute must be affirmed. Alternatively, if *both* the text and legislative history of the sentence reduction statute are ambiguous, as the majority finds, we have no choice but to apply the rule of lenity under our existing precedent.

¶ 71    For these reasons, I dissent.

¶ 72    JUSTICES NEVILLE and ROCHFORD join in this dissent.